James Johnson, Jr., was indicted for the capital murder of a 16-month-old child named Jalesa. He filed a motion to suppress certain statements he had made to the police, arguing that he had been arrested without probable cause. The trial court granted the motion to suppress. The State appealed. The Court of Criminal Appeals affirmed, without opinion.
Jalesa was the child of Johnson's girlfriend, with whom Johnson was living. The child was brought by her mother to a hospital with bruises and vomiting; she was later discharged. Later that same day, paramedics were called to the residence of the mother and child, and an ambulance transported Jalesa to the hospital's emergency room. Johnson and the mother were the only persons present with the child when the paramedics arrived. The child was readmitted to the hospital. Around 8:00 p.m., doctors at the hospital telephoned and informed the police that the bruises on Jalesa appeared to be caused either by child abuse or by leukemia. Detective S.E. Cowart testified that when he arrived at the hospital he discovered that the baby had bruises on her back and hips and had three broken ribs. Detective Cowart questioned the mother, who stated that she had been grabbing the child around the ribs while holding her. The mother stated that the bruises on the child's hips were caused by her diapers.
Detective Cowart asked Johnson to go with him to the mother's apartment so that Cowart could view the apartment for suspicious physical circumstances. Johnson voluntarily went with Detective Cowart, while the mother stayed with the child. Cowart observed nothing suspicious, and he and Johnson returned to the hospital. Johnson told Detective Cowart that Jalesa had been found unconscious and that he had tried to administer CPR to her. Johnson said he could have broken her ribs at that time. Dr. Sobell, the doctor initially treating the child, told Cowart that the broken ribs could possibly have been caused by Johnson's performing CPR on the child.
Sometime between 10:25 p.m. and midnight, doctors determined that the child was not suffering from leukemia, and the doctors' opinion was that the child had been abused. Around 12:15 a.m., Detective Cowart asked Johnson to go with him to police headquarters so that Cowart could question him. The mother stayed at the hospital while the child was being treated. Johnson voluntarily went with the officer. About 1:15 a.m., Officer Cowart received notice that the child had died; he then turned the case over to the police department's robbery/homicide division.
Detective Michael Jones was then placed in charge of the investigation. Johnson had not been restrained in any manner while he was at the police station. Around 2:50 a.m., Johnson was brought into a homicide division office for questioning and there was presented with a Miranda waiver form. On the form in the space labeled "charge" were the words "capital murder." Jones questioned Johnson from 2:50 to 4:45 a.m. During the questioning, Johnson admitted to striking and shaking the child in an attempt to stop her from crying. Later, he admitted also to holding her down on a couch and placing his knee into her abdomen and chest. The only two people the police had reason to believe had been with the child were the mother and Johnson; the trial court, in fact, found that they had been the only people with the child at the time of her injuries.
In suppressing Johnson's statements, the trial judge said that the mother had given an explanation for some of the child's injuries that the detective found implausible, while Johnson had given an explanation for the child's ribs being broken that Dr. Sobell said was reasonable. Therefore, the trial judge said that the only reasonable inference from the fact of Johnson's arrest was that the detectives did not believe Johnson's explanation either. However, there existed other information from which the detectives could have determined that there was probable cause to arrest Johnson.
Johnson's explanation was that he had performed CPR on the child and thus might have broken her ribs. The child had other symptoms, such as vomiting and bruises over different parts of the body; Johnson offered *Page 387 
no explanation for these symptoms. Dr. Sobell said only that Johnson's explanation was a plausible one. The doctors concluded, sometime between 10:25 and midnight, that the child had been abused. After the doctors informed the police of this conclusion, the police knew that either the mother or Johnson or both were not telling the whole story. Therefore, the police had probable cause to arrest the mother and Johnson.
In addition, the trial judge seemed to weigh the probable cause to arrest the mother against the probable cause to arrest Johnson. The trial judge said, "[I]t does not appear that it was any more reasonable to suspect Johnson than it was to suspect anyone else who had been with the child." (R.T. 226.) The police could not explain to the trial judge's satisfaction why there was greater probable cause to arrest Johnson than there was to arrest the mother. Therefore, the trial judge decided there was no probable cause to arrest Johnson. Probable cause to arrest one person, however, does not depend on a lack of probable cause to arrest another person.
From the time the doctors concluded that the child had been abused, the police had probable cause to arrest either Johnson or the mother. This Court, in Ex parte Beck v. State,485 So.2d 1207 (Ala. 1985), held that probable cause existed where "the defendant's truck had been seen at the [victim's] home on the afternoon of the killing" and the police had seen a pair of boots with blood splattered on them in the defendant's truck. 485 So.2d at 1210.
The police knew that only Johnson and the mother were with the child when the paramedics arrived. Johnson gave the police an explanation for the child's broken ribs — that he had given her CPR. That did not explain the bruising and the vomiting. In addition, the record does not reveal that Jalesa was in cardiac arrest when the paramedics arrived. She was in respiratory arrest, but that does not require chest compression; it requires only breathing assistance. The fact that Johnson had given Jalesa CPR, or the fact that he had not done so, would not have required the police to exclude Johnson as a suspect. At the time, the police knew of only two people who could have committed the abuse, either the mother or Johnson or both of them. Once the doctors told the police they believed that child abuse had caused the child's injuries, the police had probable cause to detain and/or to arrest two people — the mother and Johnson. The fact that they chose to detain and question Johnson first was an eminently practical choice. It was a decision for the police investigators to make at the time, and if probable cause then existed to detain Johnson, the courts will not nullify the decision of the police.
Once the police have probable cause to arrest two or more people, the police make a judgment as to whom to arrest and when. Thus, the fact that the police chose not to arrest the mother, even though they had probable cause to arrest her, does not invalidate the probable cause to arrest Johnson. The police often must make discretionary decisions, which the courts will uphold unless probable cause is clearly absent. In this case, the police had to decide whom to arrest and when, considering the possibility that the mother was covering for Johnson or that one of the suspects might inform on the other if sufficient pressure was applied. In cases that involve more than two suspects, a rule requiring the arrest of all suspects for whom there was probable cause would hamstring the police. Such a rule would prevent the police from exercising the discretion they need to properly investigate a case.
The trial judge held that Johnson was arrested at 2:50 a.m. The police record indicated this as the time of arrest. The first argument the State made at the suppression hearing, which it made again on appeal, was that Johnson was not arrested until 4:45 a.m. Because we determine that probable cause was present at 2:50 a.m., as well as at 4:45 a.m., we need not determine the time of the arrest.
At 2:50 a.m., the police had probable cause to arrest Johnson. The level of evidence needed for a finding of probable cause is low. "An officer need not have enough evidence or information to support a conviction [in order to have probable cause for arrest]. . . . '[O]nly the probability, and not a prima facie showing, of criminal activity *Page 388 
is the standard of probable cause.' " Stone v. State,501 So.2d 562, 565 (Ala.Cr.App. 1986). " 'Probable cause exists where "the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.' " Young v. State, 372 So.2d 409, 410
(Ala.Cr.App. 1979) (quoting Draper v. United States,358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959)).
Because the officers had sufficient evidence to support a finding of probable cause to arrest Johnson, and because the trial judge pitted that evidence against the evidence that would have suggested probable cause to arrest the mother, the trial judge abused his discretion in determining that there was no probable cause to arrest Johnson and that Johnson's statements were therefore inadmissible.
The judgment of the Court of Criminal Appeals affirming the trial court's order suppressing the evidence of the statements is reversed. This case is remanded, and the Court of Criminal Appeals is directed to remand the case to the trial court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
SHORES, J., concurs.
MADDOX, J., concurs specially.
COOK and BUTTS, JJ., concur in the result.