**Flossie RUDOLPH, on behalf of the minor, Lakendrick WILLIAMS, et al., Plaintiffs,**

v.

**LOWNDES COUNTY BOARD OF EDUCATION, et al., Defendants.**

No. CIV.A.02–A–151–N.

United States District Court, M.D. Alabama, Northern Division.

Jan. 15, 2003.

Jethro D. Ruffin, J.D. Ruffin LLC, Montgomery, AL, for plaintiffs.

Mark S. Boardman, Clay R. Carr, Boardman Carr & Weed PC, Chelsea, AL, Daryl L. Masters, Charles Richard Hill, Jr., Christina H. Jackson, Webb & Eley, P.C., Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This matter is before the court on Defendants Sheriff Willie Vaughner ("Vaughner") and Chris West's ("West") (collectively "the Law Enforcement Defendants") Motion for Summary Judgment (Doc. # 64) and on Defendants Lowndes County Board of Education, Superintendent John W. Covington ("Covington"), and Principal Leola Bell ("Bell") (collectively "the Education Defendants") Motion for Summary Judgment (Doc. # 67).

This case initially came before the court on the Plaintiffs' Motion for Temporary Restraining Order. A hearing was held on the motion on February 19, 2002, at which time the court granted an oral motion to also consider the request for a temporary restraining order as one for a preliminary injunction. In its Memorandum Opinion and Order of February 22, 2002, the court denied the Plaintiffs' request for preliminary injunctive relief. The court determined that the Plaintiffs failed to demonstrate a likelihood of success on the merits with respect to their claims arising from the events that led to their expulsion from school.

The court subsequently granted in part and denied in part a Motion to Dismiss the Amended Complaint filed by the Plaintiffs. The claims still pending before this court are the claims of Lakendrick Williams, Da-

mon Johnson, and Sammy Lewis for violations of their Fourth Amendment rights under 42 U.S.C. § 1983, with respect to searches and seizures of their persons.

For reasons to be discussed, the Motions for Summary Judgment are due to be GRANTED.

## II. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## III. *FACTS*

The submissions of the parties establish the following facts, viewed in a light most favorable to the non-movants:

On January 9, 2002, members of the Lowndes County Sheriff's Department conducted a search of the Central High School of Lowndes County, Alabama, with the assistance of drug-sniffing dogs. The search was conducted at the request of the Defendant Dr. J.W. Covington, Superintendent of Schools of the Lowndes County school district.

The search was begun inside the school, and drug-sniffing dogs were used to sweep the premises. No dogs "alerted" on any of the Plaintiffs. A small package of drugs was found under a table in the library at which Plaintiff Lakendrick Williams ("Williams") and other students were sitting. Williams was patted down by West of the Lowndes County Sheriff's Department, and asked to empty his pockets. He was then strip-searched by two male law enforcement officials, other than West, in the teachers' lounge. He has testified that no school officials were present during the

strip-search, and argues that this was in contravention of school board policy.

Sammy Lewis's ("Lewis") claim stems from being required to place the contents of his pockets on a table, although he was not himself searched. The vocational students had been led to the school cafeteria where they were all asked to empty the contents of their pockets on the table and drug-sniffing dogs were led through the cafeteria. The dogs did not alert on any of the students and no further searches were conducted in the cafeteria.

Dramon Johnson ("Johnson") was called to the parking lot where the drug-sniffing dogs had alerted on his car. Law enforcement officials asked him to open the car door. He opened the passenger door and entered the car to open the driver's door. Once inside the car, he was seen putting something in his mouth. He states that he was choked by officers in an effort to make him spit out the small package, but he had already swallowed it. He admitted to law enforcement that the package contained marijuana seeds. Johnson states that he was required to remove all of his clothes other than his underwear in the parking lot.

## IV. DISCUSSION

Although in analyzing the two motions for summary judgment the court will separately address the claims brought by the various plaintiffs, because the issue of the Fourth Amendment reasonableness standard to be applied is one which applies to all three Plaintiffs' claims, the court first turns to the issue of the applicable standard.

### A. Applicable Standard

■ The parties point this court to the Supreme Court decision New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) as providing the applicable standard for analysis in this case. In T.L.O., the court formulated a two part test by which to govern the reasonableness of searches by school officials. The Court expressly noted, however, that it was only considering searches carried out by school authorities acting alone and on their own authority, because the case did not present the question of the appropriate standard for assessing the legality of searches conducted by school officials in conjunction with or at the behest of law enforcement agencies. Id. at 341 n. 7, 105 S.Ct. 733. The case before this court, however, involves searches conducted by law enforcement agents at the behest of school officials, as it is apparently undisputed by the parties that Covington authorized the search of the school. In addition, Williams has presented testimony from an administrative proceeding during which West stated that Principal Bell authorized the strip search of Williams. The significance of the question presented is that in T.L.O. the standard established is one of reasonable suspicion, while the standard for Fourth Amendment searches outside of the school context is probable cause.

The Eleventh Circuit has touched on this issue in two cases. In Hearn v. Board of Public Educ., 191 F.3d 1329 (11th Cir. 1999), a law enforcement agency conducted a search with drug-sniffing dogs, the results of which were then relied upon by school officials. The court applied traditional Fourth Amendment analysis, and concluded that the alerting of a drug-sniffing dog to a person's property supplies not only reasonable suspicion, but probable cause to search the property, and that a search of an automobile is justified without a warrant by the automobile exception to the warrant requirement. Id. at 1333. The Hearn case is distinct, therefore, in several respects, but at least in the legally significant respect that the search at issue in that case was not requested, nor participated in, by school officials.

In *Thomas v. Roberts,* 261 F.3d 1160 (11th Cir.2001), the court concluded that Fourth Amendment rights had been violated by strip searches of students, but concluded that the defendants were entitled to qualified immunity. The difficulty with relying on this opinion, however, is that it has been vacated by the Supreme Court for consideration in light of the new qualified immunity standard in *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). *See Thomas v. Roberts,* 536 U.S. 953, 122 S.Ct. 2653, 153 L.Ed.2d 829 (2002). To the extent that the now-vacated opinion in *Thomas* discusses the presence of a constitutional violation, rather than entitlement to qualified immunity, however, it is still useful to this court in analyzing the instant case.[1]

In *Thomas,* a school administrator authorized a search by a law enforcement official. A teacher reasonably suspected a child in her class of having taken an envelope of money and after having searched for the money, received authorization to search individual children. She searched the female children and a local law enforcement officer who was there to speak as part of a drug awareness program searched the male children. In analyzing the searches, the court applied the *T.L.O.* decision equally to the teacher and to the law enforcement officer. *See id.* at 1167. The Eleventh Circuit did not, however, explain the reason behind the application of the standard set forth in *T.L.O.*

The Eighth Circuit has more directly discussed this issue. *See Shade v. City of Farmington, Minn.,* 309 F.3d 1054 (8th Cir.2002). In that case, the court found it important that school officials initiated the investigation and search and determined

that a reasonableness, rather than a probable cause standard, would apply. *Id.* One factor distinguishing this case from *Shade,* however, is that in that decision, the officers were searching for a weapon which presented a safety issue.

Taking *Shade* and *Roberts* as guidance, and because school officials were more involved in the searches in this case than in *Hearn,* the court concludes that the *T.L.O.* standard is applicable in this case.

### B. Claims by Flossie Rudolph on behalf of Lakendrick Williams

As earlier stated, Lakendrick Williams was seated in the library when a drug-sniffing dog alerted on a package of marijuana underneath the table at which he was sitting. The principal, Leola Bell, informed law enforcement that another student attributed the drugs to Williams. West asked Williams to empty his pockets, then patted him down, and finally turned Williams over to two other law enforcement officials who strip searched him. With the basic facts underlying this claim in mind, the court turns to the grounds for summary judgment asserted by the two groups of defendants.

#### 1. The Education Defendants

The Education Defendants assert that because no school official was present during the time of Williams' alleged strip search, and because the mere failure to have a school official present as required by school policy does not constitute a violation, there is no constitutional violation. There is evidence, however, that the law enforcement officials were instructed to search Williams by Bell. *See* Plaintiffs' Exhibit 8, page 105:21–106:9.

---

**1.** The court notes that the Plaintiffs characterize this opinion as determining that the county could be held liable for actions of the law enforcement officer. The case affirmed summary judgment in favor of the county, however-

er. *Thomas,* 261 F.3d at 1177. In any event, the Plaintiffs' argument is unavailing here as any claims against the county were previously dismissed by Order of this court. *See* Mem. Op. and Order, July 12, 2002.

In arguing that the search of Williams was reasonable in this case, the Education Defendants rely on *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821 (11th Cir.1997). As the court in *Thomas* points out, however, the *Jenkins* court only decided whether qualified immunity should be applied, rather than determining whether a constitutional violation had occurred. *See Thomas*, 261 F.3d at 1167 n. 7.

■ The two-part inquiry established in *T.L.O.* requires this court to determine whether the search was justified at its inception, and then whether the search was reasonably related in scope to the circumstances which justified the interference in the first place. *T.L.O.*, 469 U.S. at 341, 105 S.Ct. 733. The Education Defendants argue that the search of Williams was reasonable in its inception because the package of drugs was found under the table at which he was seated and another student told Bell that Williams had placed the drugs where they were found. They argue that the school officials had a reason to suspect Williams and that the object of preventing drug traffic and use was critically important. The Education Defendants finally argue that as the search was conducted in a private restroom by officers of the same sex, the search was not excessively intrusive.

Williams responds that there was no reason to believe that a strip search would reveal any drugs as no dog had alerted on Williams, he had already been searched two previous times, and other students were sitting at the table at which the drugs were found.

■ Under the now-vacated *Thomas* decision, the standard applied in determining whether there is a constitutional violation was individualized suspicion.[2] *Thom-*

*as*, 261 F.3d at 1168. As the Eleventh Circuit explains it, the Supreme Court has recognized a limited exception to the requirement for individualized suspicion where the privacy interests and the intrusion implicated are minimal and the school's interest is important, if not compelling. *See Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).

The search of Williams in this case was certainly more than minimally invasive. The court must conclude, therefore, that even assuming that there is an important school interest, individualized suspicion was required before the search could be conducted.

In this case, the presence of drugs at the table at which Williams and other students were seated and information given to Bell by another student formed the basis for individualized suspicion. "A number of courts have held that information provided by an informant can serve as a basis for a reasonable suspicion that a student may be engaged in illegal activity." *Singleton v. Board of Educ.*, 894 F.Supp. 386, 391 (D.Kan.1995). In *C.B. v. Driscoll*, 82 F.3d 383 (11th Cir.1996), a high school principal searched a student's coat based on another student's tip that the student was going to make a drug sale. The court applied the *T.L.O.* standard and determined that where there was a reliable tip with some corroboration, there were reasonable grounds to search. *Id.* at 388. In analyzing the claim, the court noted that whether the facts construed in favor of the plaintiff showed that there were reasonable grounds to suspect the presence of banned substances was a question of law. *Id.* at 388. As to the second *T.L.O.* prong, how-

---

**2.** The court looks to this standard since it was derived from the Eleventh Circuit's interpretation of Supreme Court precedent, and since the case was vacated for consideration of the application of qualified immunity principles, not based on the finding of a constitutional violation.

ever, unless "there was some factor which made the search reasonable even under plaintiff's view of the circumstances, the case presented questions for the trier of fact." *Webb v. McCullough,* 828 F.2d 1151, 1155 (6th Cir.1987).

■ In the instant case, a student had identified Williams to Bell and the drugs were found at a table at which Williams was seated. The court concludes, therefore, that individualized suspicion was met, so the search was justified at its inception. The remaining issue, therefore, is whether the measures adopted were reasonably related to the objectives of the search and not excessively intrusive given the age and sex of the student and the nature of the infraction. *T.L.O.,* 469 U.S. at 342, 105 S.Ct. 733.

First, the object of the search, to uncover drugs, has been identified by courts as weighing more heavily in the *T.L.O.* balancing than other interests, such as the recovery of stolen money to preserve order. *See Bell v. Marseilles Elem. Sch.,* 160 F.Supp.2d 883, 889 (N.D.Ill.2001). Second, while strip searches are universally considered to be the most intrusive form of a search, a grant of qualified immunity has been affirmed by another circuit where the court determined that a strip search was not unreasonable where the item sought was a small vial containing a suspected narcotic. *See Williams v. Ellington,* 936 F.2d 881, 887 (6th Cir.1991).

■ Although Williams has argued that it was a violation of school policy for there to have been no school official present during the search, such a violation of school policy does not necessarily render the search a violation of federal constitutional rights. *Cf. Hale v. Pringle,* 562 F.Supp. 598 (M.D.Ala.1983).

The search as described by one of the officers conducting it is as follows:

So we brought him into teachers' lounge. Had him strip his socks and shoes off. Turned them inside out. I believe he had a t-shirt up under his top shirt, which he didn't take off. His pants were taken all of the way off. His underwear was taken down to his knees with his privates turned away from us.

Plaintiffs' Exhibit 8; page 109:4–10. The search is also described as having lasted two to three minutes. *Id.* at page 114:1–2. The court is aware of no sworn testimony which conflicts with this description. Based on this evidence, the court cannot conclude that the search conducted was a violation of the constitution. The search was apparently conducted by male law enforcement officers in a private room and there was no touching of Williams's person. *See Justice v. City of Peachtree City,* 961 F.2d 188, 193 (11th Cir.1992)(strip search of juvenile arrestee based on reasonable suspicion was reasonable where the officers limited the search in the following manner: (1) having members of the same sex perform the search, (2) using a room where only the participants were present to conduct the search, and (3) limited the search to exclude body cavities); *Singleton,* 894 F.Supp. at 391 (search for stolen money reasonable in its scope where conducted in the privacy of the principal's office with only two male administrators present, plaintiff was not required to remove underwear, and was not touched inappropriately); *Widener v. Frye,* 809 F.Supp. 35 (S.D.Ohio 1992), *aff'd,* 12 F.3d 215 (6th Cir.1993)(search for drugs where student was removed from the presence of his classmates, conducted by two security guards, where student was made to remove socks and shoes and pants but not underwear, to lift shirt, and where crotch area was visibly inspected, and student was not touched was reasonable).

■ Alternatively, even if there were a constitutional violation, the court would conclude that the Education Defendants

are entitled to qualified immunity on this claim because there is little guidance in the Eleventh Circuit as to when a strip search for drugs based on individualized suspicion is reasonable. Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. *Ansley v. Heinrich,* 925 F.2d 1339, 1345 (11th Cir.1991). As a preliminary matter, the court must determine whether the public official was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred. *See Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988). Once it is established that a defendant was acting within his discretionary authority, the court must determine whether "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "If a constitutional right would have been violated under the *plaintiff's* version of the facts, the court must then determine 'whether the right was clearly established.'" *Id.; see also Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

■■■■■ Requiring that a constitutional right be clearly established means that liability only attaches if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier,* 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). In other words, a defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional right. *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Officials can be on notice that their conduct violates established law even in novel factual circumstances, although in some cases, a very high degree of prior factual particularity may be necessary, such as when an earlier

case expressly leaves open whether a general rule applies to the particular type of conduct at issue. *Id.* at 2516.

The applicable case law established that searches in situations such as presented here had to be based upon individualized suspicion, with limited exception, and that reasonableness of searches depended on the age and genders of students and the nature of the suspected infraction. Where, as here, individualized suspicion existed, there is no clear standard as to what constitutes a reasonable search for drugs when that search is conducted in private by persons of the same gender as the student. The court recognizes that the Eleventh Circuit's qualified immunity analysis in *Thomas* has been vacated. The court must conclude, however, that under the standard established in *Hope,* the individual Defendants did not have fair warning that their search of Williams, which was reasonable in its inception, violated the constitution and that on this alternative ground, summary judgment is due to be GRANTED as to the Education Defendants.

2. The Law Enforcement Defendants

The Law Enforcement Defendants contend that as neither West nor Sheriff Vaughner conducted the strip search of Williams, they cannot be held liable for that search. The Law Enforcement Defendants contend, therefore, that the only search at issue as to them is the search which consisted of Williams emptying his pockets and being patted down.

■■■■ To the extent that Williams's claim is based on his being required to empty his pockets and his being patted down, the court must conclude that the presence of individualized suspicion and the minimal nature of the search renders those searches reasonable. *See Skinner,* 489 U.S. at 624, 109 S.Ct. 1402; *Thomas,* 261 F.3d at 1170.

▮ To the extent that the claim is based on the strip search by law enforcement officials who are not defendants, because there is evidence that West authorized the search, there is a possible basis for liability against him. *See Cales v. Howell Public Schools,* 635 F.Supp. 454, 456 (E.D.Mich.1985). As the court discussed above, however, Williams has not established that a constitutional violation occurred and, alternatively, has not demonstrated that the law in this area was sufficiently clearly established so as to deprive individual defendants of qualified immunity.

▮ As to Vaughner, Williams has argued that the Law Enforcement Defendants can be held liable for the strip search because they knew that unlawful searches would occur and failed to adequately train and supervise those who engaged in the search. Although Vaughner cannot be held liable under § 1983 on the basis of respondeat superior, Williams argues that because the search was a planned event, Vaughner knew that training and supervision would be needed.

▮ Supervisor liability under § 1983 occurs either when the supervisor personally participates in the alleged constitutional violation, or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.1990). The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do

so. *Id.* No such showing has been made in this case. Therefore, even if there were a clearly established violation of constitutional law, the court concludes that summary judgment is due to be GRANTED on this alternative ground.

### C. Alfonia Maull on behalf of Sammy Lewis

▮ As the movants have pointed out, Plaintiff Alfonia Maull, Sr. ("Maull") is Sammy Lewis's stepfather. Sammy Lewis has not been adopted by Maull and parental rights over Sammy Lewis have been retained by his natural parents. The Defendants argue, therefore, that Plaintiff Maull is not a proper party in this case and, consequently, any claims asserted on Sammy Lewis's behalf are due to be dismissed. The Federal Rules of Civil Procedure allow for suits to be brought by persons serving as next friends.[3]

The movants cite to this court's decision in *Bradley v. Harrelson,* 151 F.R.D. 422 (M.D.Ala.1993), which stands for the unremarkable proposition that a parent can sue as a child's next friend. That case does not, however, stand for the proposition for which the Defendants have apparently cited it; namely, that a next friend must be a parent.

In *Developmental Disabilities Advocacy Center, Inc. v. Melton,* 689 F.2d 281, 286 (1st Cir.1982), the court addressed a similar question and determined that a named plaintiff who was not related to the injured party was not a proper next friend where there was evidence that the family mem-

---

**3.** Federal Rule of Civil Procedure 17(c) provides as follows:

Infants or Incompetent Persons. Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who

does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

ber had expressed opposition to the suit, and therefore, the injured party was represented by a family member. In this case, there apparently is a relationship between the plaintiff and injured party, and there is no evidence of opposition to representation. There also is no evidence that there is a conflict between the interests of Lewis and the next friend. Therefore, the court concludes that this case is not due to be dismissed on this ground.

▆▆▆ The basis of Lewis's claim is that he, along with the other students in his class, was led to the cafeteria and instructed to empty his pockets while drug-sniffing dogs were led through the cafeteria.

### 1. Education Defendants

The Education Defendants argue that the extent of the search of Lewis was so minimal so as to be considered reasonable under applicable Fourth Amendment standards. The Education Defendants argue that allowing law enforcement officials to search the contents of Lewis' pockets without individualized suspicion does not constitute a constitutional violation. They further contend that as the search was conducted by law enforcement officials, they bear no liability.

Lewis argues that there was no nexus between the searches done and there was no individualized suspicion for the items being searched for, since no dog had alerted on Lewis. Lewis contends that there was a less intrusive means to combat illegal drug use in the school and that the search was not reasonable at its inception because the school did not have a drug problem and there was no justification for bringing all of the students from the vocational school and requiring them to empty their pockets.

▆▆▆ As earlier stated, a search may be conducted without individualized suspicion when the privacy interests implicated are minimal and an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion. *Skinner,* 489 U.S. at 624, 109 S.Ct. 1402. Schoolchildren have lesser expectations of privacy, although they do retain a legitimate expectation of privacy in their persons. *See Vernonia Sch. Dist. v. Acton,* 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). The facts of this case do not fit neatly into the exception to individualized suspicion recognized in *Vernonia,* as there is no record evidence of a widespread drug abuse problem in the school at issue in this case. There is, however, evidence that Covington contacted law enforcement officials with a concern about drug use in the schools. *See* Plaintiffs' Exhibit 7 at ¶ 3.[4]

▆▆▆ The limited intrusive nature of the search of Lewis, when weighed against the interest of combating drug abuse and sales indicates that the search of Lewis was justified at its inception without individualized suspicion. The search of Lewis was not unlike the search of a student in the now-vacated *Thomas* decision, which was determined to be reasonable, wherein a student was required to pull out his pants pockets and to allow law enforcement to shakes his pants. *See Thomas,* 261 F.3d at 1170. The next issue, therefore, is whether the measures adopted were reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction. *T.L.O.,* 469 U.S. at 342, 105 S.Ct. 733. The court concludes that the search conducted was reasonably related to the objective of find-

**4.** Although the Plaintiffs contend that Bell testified that there was no drug problem at the school, the Plaintiffs do not cite to any record evidence in support of this proposition.

ing illegal drugs and was not excessively intrusive, as there was no touching of the student or his belongings. Accordingly, summary judgment is due to be GRANTED as to the Education Defendants on the claim asserted on Lewis's behalf.

### 2. · Law Enforcement Defendants

 The Law Enforcement Defendants state that as West was not involved in the search of Lewis, Lewis' claim is that Vaughner asked him to empty his pockets and stand by his seat. Clearly, the activity of the drug-sniffing dog walking up and down the aisles sniffing for contraband is not a Fourth Amendment search. *See Hearn v. Board of Public Educ.*, 191 F.3d 1329 (11th Cir.1999). The Law Enforcement Defendants argue, therefore, that requiring the students to allow the contents of their pockets to be searched did not constitute a Fourth Amendment search.

Had the dogs merely walked by the students, the court would see some merit in the Law Enforcement Defendants' argument. As the students were asked to empty their pockets, however, it would appear that more than a mere sniffing by drug dogs occurred. The court must conclude, however, that because law enforcement did not physically search the contents of Lewis's pockets, the search was so minimal as to be reasonable, and, therefore, the court need not reach the question of whether requiring a person to empty his or her pockets is not considered a search within the context of drug-sniffing dogs. Summary judgment is, therefore, due to be GRANTED on Lewis's claims as to these Defendants as well.

### D. Janet Johnson on behalf of Dramon Johnson

Drug-sniffing dogs alerted on Johnson's car and he was asked by a law enforcement official to open his vehicle. As earlier stated, he climbed into his vehicle and swallowed a small package of marijuana seeds which was contained in the car. Johnson claims that law enforcement officers choked him in an attempt to force him to turn over marijuana seeds he had swallowed, and that they subsequently made him remove his shirt, pants, and shoes in the parking lot while they searched him for illegal narcotics. The search was apparently conducted by law enforcement officials who have not been named defendants in this case.

 There is evidence in this case to support a finding of individualized suspicion as drug dogs had alerted on Johnson's car and he admitted to swallowing a package of marijuana seeds. The remaining question, therefore, is whether the measures adopted were reasonably related to the objectives of the search and not excessively intrusive given the age and sex of the student and the nature of the infraction. *T.L.O.*, 469 U.S. at 342, 105 S.Ct. 733.

The argument has been advanced that the immediate search of Johnson in the parking lot was justified to determine whether the substance Johnson had swallowed was dangerous to his health. The court cannot conclude that the search, as presented in the evidence viewed in a light most favorable to the non-movant, was reasonably related to the objectives of the search and not excessively intrusive, however. Under the theory advanced in defense, the search was not conducted to find illegal contraband in order to combat drug use, but to ensure that Johnson was not harmed by the substance he swallowed. Since Johnson identified the substance and retrieved it from his car, not his person, the court must conclude that requiring him to strip to his underwear in a public parking lot was excessively intrusive. The next issue, therefore, is whether there are named Defendants in this case who can be held liable for this constitutional infringe-

ment, since none of the persons who actually conducted the search of Johnson have been named as Defendants.

### 1. Education Defendants

■ The Education Defendants argue that they cannot be held accountable for the actions of the law enforcement officials. Covington contacted law enforcement and requested that a search of a school be conducted, although there is no evidence that he requested or authorized the strip search of Johnson. There also is no evidence before the court that Bell authorized any search of Johnson at the car. Without evidence that Covington or Bell individually participated in the search, the court cannot conclude that they participated in any constitutional violation.

The only analogous case of which the court is aware is from a district court in another circuit. *See Philadelphia Federation of Teachers v. School District of Philadelphia*, No. Civ. A. 97–4168, 1998 WL 196403 (E.D.Pa.1998). In that case, a school principal authorized searches, but did not authorize the particular actions taken by law enforcement in conducting searches. *Id.* at *7. The court concluded that there was a sufficient question of fact to preclude summary judgment as there was evidence that the principal was deliberately indifferent to the fact that the scope of the searches she had authorized was being exceeded. *Id.* at *8. Assuming that under appropriate facts, deliberate indifference could extend liability, there is no evidence sufficient to support a finding of deliberate indifference in this case.

■ Alternatively, the court is aware of no relevant case law which would have given Covington or Bell fair warning that they could be held liable for the actions of the Law Enforcement Defendants. To the contrary, the law is clear that even if the law enforcement officers were acting as agents of Covington once he authorized the search of the school, there is no re-

spondeat superior liability under § 1983. *See Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir.1992).

■ Johnson appears to be arguing that it is the violation of school policy itself, that no school officials were present during the search, which gives rise to liability against Covington and/or Bell. To rise to the level of a violation of a federal right, however, the Defendants' actions must have violated the constitution, not merely school policy. The contours of federal law are not defined by state school district policies. *See Hale v. Pringle*, 562 F.Supp. 598, 601 (M.D.Ala.1983). Further, as the Eleventh Circuit pointed out in *Thomas*, a school official who acts contrary to school policy does not establish policy for the school district. *Thomas*, 261 F.3d at 1173.

■ The next issue, therefore, is whether the Board of Education can be held liable based on the actions of the law enforcement officers. Even though law enforcement officials were acting at the request of the school system, § 1983 liability cannot be predicated on respondeat superior liability. *Harvey*, 949 F.2d at 1130. Instead, there must be a policy or custom which is the moving force behind the constitutional violation. Although the Plaintiffs have advanced an argument that there was a failure to train, as the Education Defendants point out, there has been no showing that the Board of Education had the authority or ability to train the law enforcement officers.

The Plaintiffs have also argued that the Board of Education ratified the actions of the officers under *St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). In the *Thomas* decision, vacated for reconsideration of its determination of qualified immunity, the Eleventh Circuit addressed a similar argument. The court rejected an argument based on *Praprot-*

*nik,* reasoning that where the school district had no opportunity to measure decisions to search students against the school's policy until after the search had taken place, the district could not have ratified the decision to search the children prior to the decision becoming final. *Id.* at 1174. The *Thomas* decision is an indication of the ·way in which the Eleventh Circuit would apply *Praprotnik* in this case. The court concludes, therefore, that summary judgment is due to be GRANT-ED as to the Education Defendants on Johnson's claims.

### 2. Law Enforcement Defendants

■ The Law Enforcement Defendants argue that they cannot be held liable for a search conducted by officers who are not defendants in this case. They argue that the only basis for liability alleged against Vaughner is that he did not intervene in the search by other officers. Johnson has stated that Vaughner was the "overseer" of the search of him. There is apparently no contention that West should be held responsible for the search of Johnson.

■ Johnson's argument with respect to Vaughner is that Vaughner did nothing to assist him when "deadly force" was used to search the contents of Johnson's mouth. Johnson does not appear to argue that Vaughner should be held liable for the subsequent strip search.[5] Johnson describes the alleged choking as a use of "deadly force," and therefore apparently contends that there is an excessive force claim in this case. The Complaint originally alleged that Johnson was choked and

wrestled to the ground, causing physical injury. Complaint at ¶ 18. No evidence of any physical injury has been produced, however.[6] The Law Enforcement Defendants did not originally respond to this claim other than to state that there was no excessive force claim asserted against any Defendant in this case, and to argue that there is no duty to intervene in an illegal search. The court agrees that there is apparently no authority recognizing a duty to intervene in an illegal search and that Vaughner is at least entitled to qualified immunity on a failure to intervene in a search claim, as there is no case law which would have given him fair warning under *Hope* that a failure to intervene in an illegal search violates the constitution. *Cf. Wilson v. Strong,* 156 F.3d 1131, 1135 (11th Cir.1998)(qualified immunity where there was no relevant law holding that a private party's failure to intervene in an illegal arrest violated the constitution). As to the duty to intervene in a use of excessive force, however, this court has concluded that such a claim had been asserted in this case and has given the Defendants additional time in which to respond to that claim.

■ The Eleventh Circuit has held that an officer who fails to take reasonable steps to protect a person from another officer's use of excessive force can be held liable for his failure to act. *Riley v. Newton,* 94 F.3d 632, 635 (11th Cir.1996). Johnson's argument is that even if the Law Enforcement Defendants can establish that the search was reasonable at its

---

**5.** If Johnson does so contend, he has failed to demonstrate any basis for liability against Vaughner as Vaughner did not personally participate in the search and Johnson has not adequately established a causal connection. *See Brown,* 906 F.2d at 671.

**6.** In their response, the Education Defendants refer to a medical report apparently submitted as a trial exhibit to which they have filed an objection. As the Plaintiffs have not pointed to this record in support of their opposition to summary judgment, it is not properly considered by this court in ruling on the Motion for Summary Judgment.

inception, the use of deadly force was unreasonable in its scope.

Vaughner's testimony on this issue as stated in his affidavit is that he heard the officers tell Johnson to spit out what was in his mouth. Vaughner Affidavit at ¶ 21. He further states that there is a concern when someone puts something in his or her mouth during the course of a drug sweep because swallowing a narcotic can be harmful to the individual. *Id.* Vaughner further states that the officers attempted to get Johnson to spit out whatever was in his mouth and that they acted reasonably given that Johnson may have swallowed a harmful substance. *Id.* at ¶ 22.

Johnson's testimony is that one officer choked him under his neck and one grabbed him from the back of his neck. Plaintiffs' Exhibit 4 at page 34:12–14. It is apparently undisputed that Johnson was attempting to dispose of evidence which was the subject of the search of his vehicle. Johnson has not pointed this court to evidence of any injury he sustained as a result of the alleged excessive force.

The Law Enforcement Defendants have taken the position that there is no excessive force claim in this case, but that, even if there is, Vaughner cannot be held liable for failure to intervene. According to the Law Enforcement Defendants, there is no evidence to establish that Vaughner was in a position to intervene in the use of force, or that any excessive force was used.

 The Fifth Circuit has addressed an excessive force claim based on choking which occurred during the search of a detainee's mouth. *See Williams v. Bramer,* 180 F.3d 699, 703 (5th Cir.1999). In that case, the court concluded that the injury alleged—dizziness, temporary loss of breath and coughing—did not rise to the level of a constitutional violation since whenever a detainee is physically searched by an officer, a physical confrontation inev-

itably results. *Id.* at 704. In this case, there is no evidence of any alleged injury, but even assuming that at least the injury asserted in *Williams* was present in this case, taking into account that the officers were attempting to prevent Johnson from destroying evidence and/or swallowing a potentially harmful substance, the court cannot conclude that Johnson has established an unconstitutional use of force. Alternatively, the court cannot conclude that, under these facts, Vaughner would have had fair warning that his failure to intervene was a constitutional violation. The court must conclude, therefore, that summary judgment is due to be GRANTED to the extent that the Plaintiffs intended to assert a separate excessive force claim against Vaughner based on a failure to intervene in the use of force by law enforcement officers.

## V. CONCLUSION AND ORDER

For the reasons discussed, the court concludes that the Motions for Summary Judgment (Doc. #'s 64, 67) are due to be and are hereby ORDERED GRANTED. A separate Judgment will be entered in accordance with this Memorandum Opinion and Order.