[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 545 
Maurice Montgomery was indicted for one count of third-degree burglary. The State appeals from the trial court's order granting Maurice Montgomery's motion to suppress the confession that he made to police officers concerning his involvement in the burglary.
 Facts
Tyrone Boykin, of the Conecuh County Sheriffs Department, was the only witness *Page 546 
presented at the suppression hearing. He testified to the following.
On the evening of August 29, 2004, David Rankin, owner of Rankin's, a small general store in the Burnt Corn community of Conecuh County, telephoned authorities to report a burglary at his store. Sgt. Davis[1] was dispatched to the store: Boykin arrived approximately 30 minutes after Sgt. Davis. Upon arriving at the scene, Boykin observed that the door of the store had been kicked, someone had attempted to pry the door open, and a pair of shoes and one sock were lying in the store's parking lot. Boykin interviewed David Rankin. Rankin told Boykin that he was asleep in his room next to the store when he was awakened by a "lot of loud knocking" so he got up and went outside. (R. 7.) He told Boykin that he saw "what he thought was two subjects . . . [and] one had a white shirt on." (R. 7.) Rankin stated that he "fired four or five [gun] shots." (R. 7.) Rankin also told Boykin that the shoes and sock were not lying in the parking lot when he closed the store and that when he fired the gunshots, the individuals had run in the direction where the shoes and sock were later recovered.
As part of the investigation, Boykin contacted the "K-9 unit from Atmore." ('R. 8.) Boykin testified that in Conecuh County the K-9 unit was referred to as `the dog wardens." (R.8.) He stated that about "a quarter of a mile" down the road from Rankin's store, the officers discovered an abandoned automobile parked on the side of the road. (R, 8.) It was determined from the license plate that this automobile was registered to Tyrone Stallworth, a suspect in the burglary.[2] (R. 20.) At approximately 12:30 a.m., the dog wardens arrived and were taken to the location of the shoes and sock. "[T]hey beg[a]n to track" at this time. (R. 9, 23.)[3] Between 5:25 and 5:30 a.m., after tracking a distance of about four miles (R. 17), the dogs "c[a]me out on [Montgomery]" who was on the roadside with a juvenile. Boykin, who had been patrolling the roadways while maintaining radio contact with the dog wardens, was contacted and went to the scene. When Boykin arrived, Montgomery was lying face down on the ground and was handcuffed. (R. 13.) Boykin said that Montgomery and the juvenile were both wearing shoes.[4] Boykin stated that Montgomery was not under arrest at this time. However, Boykin gave the following testimony regarding Montgomery's status:
 "Q. [By defense attorney on cross-examination]: If Maurice Montgomery had gotten up and said `I'm leaving,' would you have stopped him?
 "A. I would have had questions I would have had to ask him.
 "Q. You would have held him. So he was not free to leave at the time you drove up and found him on the ground, was he?
 "A. No, sir."
(R. 14.) At that time Boykin advised Montgomery of hisMiranda[5] rights and a Miranda "form" was reviewed with Montgomery. *Page 547 
Regarding the burglary, Boykin said that Montgomery "talked briefly about it, but he didn't give a whole lot of details." (R. 11.)
Montgomery was taken to the jail facility in Evergreen. Boykin testified that Montgomery was not under arrest but that he was not free to leave the jail. Montgomery was again read hisMiranda rights, and the officers again went over their standard Miranda form to assure that he understood hisMiranda rights. The officers then took a statement from Montgomery in which he confessed to being involved in the burglary. Boykin stated that after Montgomery confessed, he was arrested for the burglary at Rankin's store.
Boykin testified that at the time Montgomery was handcuffed and taken to the jail, the only evidence Boykin had indicating that Montgomery had been involved in the burglary was that, after approximately four of five hours of tracking, the dog wardens had tracked Montgomery to the roadside location. (R. 18.) Boykin stated: "I didn't have nothing but the dogs tracking him," and Boykin said that he "needed [Montgomery's] confession in order to arrest him for burglary." (R. 19.) Boykin also confirmed that the only circumstance connecting Montgomery to the shoes and sock found in Rankin's parking lot was Rankin's statement that the suspects had run away from the store in the direction of the area in which the shoes and sock were found.
The defense argued at the suppression hearing that dog-tracking evidence cannot establish probable cause. The trial court considered the argument in the following context without objection:
 "THE COURT: Let's assume that they'll [dog trainers] say exactly what they always say, which is, they train the dogs —
 ". . . .
 "— and once they put the dog on a scent, he is infallible and will find the person that's there.
 . . . .
 "I assume the dog wardens would testify that they started at the store and the dog bayed and made the type" engaged in the type of behavior that told them they were on track all the way down until they found [Montgomery].
 ". . . .
 "If they testified to that, the question is: Is that probable cause to arrest for this burglary?"
(R. 21-22.)
After taking this question under advisement, the trial court granted Montgomery's motion to suppress by noting "Granted" on the face of the motion. (CR. 8.)
 Issue
The State argues that dog-tracking evidence alone can establish probable cause to arrest, and, thus, that the trial court erred in granting the motion to suppress.
 Standard Of Review
"This Court reviews de novo a circuit court's decision on a motion to suppress evidence when the facts are not in dispute. See State v. Hill, 690 So.2d 1201, 1203 (Ala. 1996);State v. Otwell, 733 So.2d 960, 952 (Ala.Crim.App. 1999)." State v. Skaggs, 903 So.2d 180,181 (Ala.Crim.App. 2004). "A trial court's ultimate legal conclusion on a motion to suppress based on a given set of facts is a question of law that is reviewed de novo on appeal. See State v. Smith, 785 So.2d 1169 (Ala.Crim.App. 2000)." State v. Hargett, 935 So.2d 1200, 1204
(Ala.Crim.App. 2005). Here, the facts are uncontested; the only issue is the circuit court's application of the law to those facts. *Page 548 
 Analysis
First, despite Boykin's assertion that Montgomery was not under arrest when he was seized by officers, the facts indicate that Montgomery was placed under arrest when he was seized at the road-side. "An individual has been arrested when he is not free to go, whether or not formal words of arrest are used." Michele G. Hermann, Search and Seizure Checklists § 4.1 (Thompson West 2006).
 "`A determination of "custody" is not based on "the subjective evaluation of the situation by the defendant or the police officers." Davis [v. Allsbrooks, 778 F.2d 168,] at 171 [(4th Cir.1985)] J, Where there has not been a formal arrest (as here), an objective test is used to determine whether the suspect's freedom of action has been restricted by the police in any significant manner. Dams, supra at 171; [United States v. Miller. [581 F.Supp. 1296, 1299 (W.D.Pa.1984)]; Warrick [v. State, 460 So.2d 320, 322
[(Ala.Cr.App. 1984)]; Hall [v. State, 399 So.2d 348, 351 (Ala.Cr.App. 1981)]. "The only relevant inquiry is how a reasonable man in the suspect's position would have understood his position." United States v. Jonas, 786 F.2d 1019, 1022
(11th Cir.1986) (quoting Berkemer v. McCarty, 468 U.S. 420, [4421, MM S.Ct. 3138, 3152, 82 L.Ed.2d 317 (1984))."'
Barksdale v. State, 788 So.2d 898, 903
(Ala.Crim.App. 2000) (quoting Hooka v. Stale,534 So.2d 329, 348 (Ala.Crim.App. 1987), aff'd, 534 So.2d 371 (Ala. 1988)).
 "Probable cause to support a warrantless arrest must exist at the time of the arrest. Davis v. State, 507 So.2d 1023 (Ala.Cr.App. 1986). Probable cause exists if facts and circumstances known to the arresting officer are sufficient to warrant a person of reasonable caution to believe that the suspect has committed a crime. United States r. Rollins, 699 F.2d 530 (11th Cm) cert. denied, 464 U.S. 933, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983). `In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act. . . . `Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1891 (1949). `"The substance of all the definitions of probable cause is a reasonable ground for belief of guilt."' Id. `Probable cause to arrest is measured against an objective standard and, if the standard is met, it is unnecessary that the officer subjectively believe that he has a basis for the arrest.' Cox v. State, 489 So.2d 612 (Ala.Cr.App. 1985). The officer need not have enough evidence or information to support a conviction in order to have probable cause for arrest. Only a probability, not a prima facie showing, of criminal activity is the standard of probable cause. Stone v. State, 501 So.2d 562
(Ala.Cr.App. 1986). `"[P]robable cause may emanate from the collective knowledge of the police. . ."' Ex parte Boyd, 542 So.2d 1276, 1284
(Ala. 1989) (citations omitted)."
Dixon v. State, 588 So.2d 903, 906 (Ala. 1991).
Here, when the dog wardens tracked the scent to Montgomery, he was seized by officers, handcuffed, "Mirandized," and taken to the jail facility without the option of leaving. Essentially, from the moment the dog wardens tracked the scent the dogs had been given to Montgomery, Montgomery's freedom of movement was completely curtailed for what was to be an indefinite period. These circumstances equate to an arrest. *Page 549 
"[T]he general rule [is] that every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause."Michigan v. Summers, 452 U.S. 692, 700,101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). "In order for a police officer to make a valid arrest without a warrant, the officer must have `probable cause to believe that a felony has been committed, or is being committed, and that the person to be arrested committed it.' Rule 4.1, Ala. R.Crim. P.; see also Brooksv. City of Dothan Police Dep't, 562 So.2d 162
(Ala.[1990]); Ex parte Beck . . ., 485 So.2d 1207
(Ala. 198[5])." State v. Johnson, 682 So.2d 385, 388
(Ala. 1996)(Maddox, J., concurring specially).
 "Rule 4.1, Ala.R.Crim.P., and § 15-10-3(a)(3), Ala. Code 1975, provide that a police officer may arrest a person without a warrant when the officer has probable cause to believe that the person arrested committed a felony. `Reasonable cause,' as set out in § 15-10-3(a)(3), is equated with `probable cause.' See Smith v. State, 727 So.2d 147
(Ala.Crim.App. 1998), aff'd, 727 So.2d 173 (Ala. 1999), cert. denied, 528 U.S. 833 120 S.Ct. 91, 145 L.Ed.2d 77
(1999)."
Williams v. State, 830 So.2d 45, 49
(Ala.Crim.App. 2001).
Exigent circumstances for a warrantless arrest are not necessary in this circumstance." `[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo,443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979).
The Alabama Supreme Court has defined probable cause as follows:
 "Probable cause exists if facts and circumstances known to the arresting officer are sufficient to warrant a person of reasonable caution to believe that the suspect has committed a crime. `In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act. . . .' `"The substance of all the definitions of probable cause is a reasonable ground for belief of guilt"' `Probable cause to arrest is measured against an objective standard and, if the standard is met, it is unnecessary that the officer subjectively believe that he has a basis for the arrest.' The officer need not have enough evidence or information to support a conviction in order to have probable cause for arrest. Only a probability, not a prima facie showing, of criminal activity is the standard of probable cause.'"
Dixon v. State, 588 So.2d 903, 906 (Ala. 1991), (quoted subsequently to Scarbrough v. State,621 So.2d 996, 1000 (Ala.Crim.App. 1992), aff'd, 621 So.2d 1006 (Ala. 1993)).
It is undisputed that Montgomery was advised of hisMiranda rights. The issue for disposition is whether officers had probable cause to support Montgomery's detention (which we will hereinafter refer to as his arrest), which was not based on a warrant. If they did not, then the arrest was illegal, and the fruit of the arrest, i.e., Montgomery's confession at the jail, was tainted by the violation of Montgomery's constitutional rights and the trial court properly suppressed it. We believe that evidence that the dog wardens tracked a scent from the scene to Montgomery created sufficient probable cause to arrest *Page 550 
Montgomery based on the following rationale.
Evidence that a defendant was apprehended as the result of dog-tracking has a long history of being admissible attrial in Alabama.
 "The admissibility of dog-tracking evidence upon a proper predicate has been recognized in Alabama for over a century. See Burks v. State, 240 Ala. 587, 200 So. 418 (1941); Orr v. State, 236 Ala. 462, 183 So. 445 (1938); Loper v. State, 205 Ala. 216, 87 So. 92 (1920); Gallant v. State, 167 Ala. 60, 52 So. 739 (1910); Hargrove v. State, 147 Ala. 97, 41 So. 972
(1906): Richardson v. State, 145 Ala. 46, 41 So. 82 (1906); Little v. State. 145 Ala. 662, 39 So. 674 (1905); Hodge r. State, 98 Ala. 10, 13 So. 385 (1893); Hargrove v. State, 437 So.2d 663 (Ala.Crim.App. 1983); Moore v. State, 26 Ala. App. 607, 164 So. 761 (1935); and Allen v. State, 8 Ala.App. 228, 62 So. 971
(1913). As the Alabama Supreme Court noted in 1893, `[i]t is common knowledge that dogs may be trained to follow the tracks of a human being with considerable certainty and accuracy. Hodge, 98 Ala. at 11, 13 So. at 386. The majority of states also recognize the admissibility of dog-tracking evidence as long as the proper foundation is laid. See generally J.M. Zitter, Annotation, Evidence of [Trailing] by Dogs in Criminal Cases, 81 A.L.R.5th 563 (2000), and the cases cited therein."
Gavin v. State, 891 So.2d 907, 971
(Ala.Crim.App. 2003) (footnote omitted).[6]
Assessing probable cause is less rigorous than assessing the admissibility of evidence at trial on the merits. Because probable cause does not concern guilt or innocence," `" `the strict standard of proof beyond a reasonable doubt does not apply. Bromn v. State, 353 So.2d 1384 (Ala. 1977)."The only standard which must be met is whether areasonable man would believe the crime occurred and that thedefendant committed it."'"'" W.T.K. c. State,598 So.2d 33, 36 (Ala.Crim.App. 1992) (quoting Slaton v. State,555 So.2d 814, 815 (Ala.Crim.App. 1989), quoting in turnAsh v. State, 424 So.2d 1381, 1383
(Ala.Crim.App. 1982))." `An officer need not have enough evidence or information to support a conviction [in order to have probable cause for arrest]. . . . "Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." `Stone v. State,501 So.2d 562, 565 (Ala.Cr.App. 1986)." State v. Johnson,682 So.2d 385, 387-88 (Ala. 1996).
 "[A]t the arrest stage we are dealing only with probabilities, and not the more stringent standard required for a conviction. The probable cause standard does not require an arresting officer to rule out all other possible suspects before he or she detains a particular individual. See State v. Johnson, 682 So.2d 385, 391 (Ala. 1996)(Maddox, J., concurring specially); see also Darden v. State, 571 So.2d 1272, 1279-80 (Ala.Cr.App. 1990), quoting 1 W. Lafave, Search and Seizure § 3.2(e) at 591-92 n. 148 (2d ed. 1987) (' "If the function of arrest were merely to produce persons in court for purposes of their prosecution, then a more-probable-than-not-test would have considerable appeal. But there is also an investigative function which is served *Page 551 
by the making of arrests."' (Footnote omitted.))."
Melson v. State, 775 So.2d 857, 879
(Ala.Crim.App. 1999), aff'd, 775 So.2d 904 (Ala. 2000).
We also note that at the suppression hearing there appeared to be some question as to whether a predicate had to be laid before testimony concerning dog tracking could be considered. The trial court dispensed with the uncertainty by finding that the dog wardens were sufficiently trained and reliable. (SeeMelson.) Though dicta, we note the distinction betweenobtaining a warrant based on probable cause and admitting evidence at trial discussed in Fitzgerald v.State, 153 Md. App. 601, 837 A.2d 989 (2003), aff'd, 384 Md. 484, 864 A.2d 1006 (2004):
 "`[T]here are [no] such requirements or qualifications that must be satisfied before the results from a canine sniff can be considered in a warrant application in the assessment of probable cause. By analogy, a confession must be shown to be voluntary before it may be introduced in court. A warrant application may make reference to a confession without any such qualification. A lineup identification must be shown to be reliable before it can be introduced in court. There is no such threshold requirement for it to be considered in a warrant application. Prior criminal records that may never be introduced in court are standard fare in a warrant application. The warrant-issuing process is ex parte and is far less formal than a courtroom proceeding.'
"(Emphasis supplied)."
Fitzgerald v. State, 153 Md App. at 632-33,837 A.2d at 1006 (quoting Emory v. State, 101 Md.App. 585, 635,647 A.2d 1243 (1994)). It follows that this distinction would also hold true in a suppression hearing reviewing probable cause for a warrantless arrest. The requirements in place to assure a conviction beyond a reasonable doubt have no place in discerning probabilities to arrest.
We also note that in the context of arrest pursuant to awarrant, an affidavit asserting that a trained dog tracked a suspect or alerted to the presence of illegal drugs is sufficient probable cause to obtain a warrant. See generally drug searches: Fitzgerald v. State, 153 Md.App. 601,837 A.2d 989 (2003); United States v. Meyer,536 F.2d 963 (1st Cir.1976); United States v. Sentovich,677 F.2d 834 (11th Cir.1982); United States v. Berry,90 F.3d 148, 153 (6th Cir.1996); United States v.Klein, 626 F.2d 22, 27 (7th Cir.1980); United Statesv. Kennedy, 131 F.3d 1371 (10th Cir.1997).
We also recognize that an alert by a trained drug-sniffing dog provides probable cause to search without a warrant. SeeUnited States v. Banks, 3 F.3d 399 (11th Cir.1993);Rudolph ex rel. Williams v. Lowndes County Bd. ofEduc, 242 F.Supp.2d 1107 (M.D.Ala.2003); Webster v.State, 662 So.2d 920 (Ala.Crim.App. 1995); Dalton v.State, 575 So.2d 603 (Ala. 1990); Rainey v. State,575 So.2d 608 (Ala.Crim.App. 1990); Sawyer v. State,598 So.2d 1035 (Ala.Crim.App. 1992).
Thus, based on the above, together with the fact that in Alabama" `[i]t is common knowledge that dogs may be trained to follow the tracks of a human being with considerable certainty and accuracy,'" Gavin v. State, 891 So.2d at 971, we find that the results of dog tracking can provide probable cause to arrest. Issues of predicate and weight of the evidence are trial issues.
In the instant case the facts and circumstances within Boykin's knowledge were that two suspects had left the scene of the burglary on foot and had not returned to *Page 552 
what appeared to be the getaway vehicle. Trained dogs from Atmore prison had been put on the scent of these individuals from clothing apparently left at the crime scene. The dogs tracked the scent for several hours to Montgomery, who was traveling with a companion on the roadside at approximately 5:00 a.m. These circumstances were sufficient to warrant a prudent person, or one of reasonable caution, to believe that Montgomery had committed the burglary.
 Conclusion
The trial court improperly granted Montgomery's motion to suppress, and that judgment is hereby reversed. We remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.
[1] Sgt. Davis's first name is not disclosed in the record before the Court
[2] Boykin testified that at the time of the suppression hearing, Stallworth was serving time at Atmore prison.
[3] Officer Boykin also referred to this as tin: dogs being put on the scent of the perpetra tors.
[4] There was no other testimony about what Montgomery or the juvenile were wearing.
[5] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).
[6] "For dog-tracking evidence to be admissible, the State must establish the following: the training and reliabilityof the dog, the qualifications of the person handling the dog, and the circumstances surrounding the tracking by the dog. The foundational evidence need not be overwhelming or specific, but must be sufficient to indicate reliability of the evidence."Gavin v. State, 891 So.2d at 971.