A jury convicted George Ester Warren, Jr., of possession of cocaine, in violation of § 13A-12-212, Ala. Code 1975. The trial court sentenced Warren to eight years' imprisonment. Warren appealed to the Court of Criminal Appeals. On appeal, he argued that the cocaine, which had been contained in a small plastic container in his pants pocket, was seized in violation of his rights guaranteed by the Fourth Amendment to the United States Constitution and, therefore, that the trial court erred in denying his motion to suppress the cocaine evidence. The Court of Criminal Appeals affirmed. Warren v. State, 783 So.2d 74
(Ala.Crim.App. 1998). This Court granted certiorari review to determine whether the Court of Criminal Appeals erred in holding that the trial court had properly denied Warren's motion to suppress. We reverse and remand.
John Toney, a captain in the narcotics division of the Opelika Police Department, testified that on the afternoon of August 14, 1996, he received a telephone call from a confidential informant. Toney stated that he not only recognized the informant's voice, but also recognized the telephone number that was shown on a screen at his telephone. He said he had talked with the informant approximately seven or eight times in the previous six to eight weeks. On this occasion, the informant gave Toney his name. Toney testified that none of the information received previously from the informant had led to arrests, but that the informant had always offered reliable information.
The informant told him, he said, that the informant was watching a group of black males standing around a white car, and that the men were buying and selling drugs. The informant provided a street address, a description of the car, and a partial license plate number of the car (all digits except the last). The informant did not, however, give any physical description of the men standing around the car, except to say that there were approximately four or five of them, that they were black, and that they looked like the "usual drug dealers." *Page 88 
Within five minutes, Toney relayed the information to Detective Greg Wilson, a plainclothes detective in the narcotics division. Toney instructed Wilson to proceed to the scene to investigate. Wilson, accompanied by two other detectives, drove to the scene in an unmarked police car. Wilson testified that when he got to the address given by the informant, he saw several black males standing around a white car that matched the description and that had a license plate with a number that matched the partial tag number given by the informant. Wilson radioed for assistance, he said, and then he and the other two detectives got out of their car and approached the men standing around the white car. Wilson said that he and the other detectives identified themselves as police officers and began "field interviews" of the men, which consisted of asking their names and asking to see their identification. Warren was one of the men standing around the car, and he cooperated with the officers' requests. At that point, an additional police officer arrived in response to Wilson's request for assistance. The officers then decided to pat the men down for weapons. Wilson testified that the purpose of the patdown was "[t]o look for weapons or anything that could be used to harm one of the officers or detectives that were there at the scene," and that to conduct a patdown was standard procedure in this kind of situation.
Warren contends that he was patted down by one officer, who, he says, found no weapons on his person; then, he says, Wilson proceeded to pat him down for weapons a second time. Both Wilson and Officer Gary Jernigan testified, however, that Jernigan began the patdown of Warren, that Wilson joined him, and that together they completed the patdown of Warren. Wilson testified that during the patdown, he felt what he described as a "plastic box" in Warren's front pants pocket, and, he said, he removed it. When asked why he did so, Wilson replied:
 "Through my experience as being an investigator in narcotics, I believed that it did, in fact, contain drugs because I have ran across the same type plastic containers in the past that have came off defendants that did, in fact, hold cocaine."
The "plastic box" was, in fact, a container ordinarily used to hold breath mints known as "Tic Tacs." The Tic Tac box in Warren's pocket, however, contained several small rocks that Wilson said appeared to be crack cocaine. The forensics report confirmed that the small rocks were crack cocaine.
Although Wilson testified that he and his fellow officers conducted the patdowns for safety reasons to search for weapons, he said that he reached into Warren's pocket to retrieve the Tic Tac box not because he thought it was a weapon, but because he thought it contained drugs:
 "Q. . . . Did you ever feel anything that you felt was a weapon?
"A. No, I did not.
 "Q. Okay. Why if you didn't feel anything that you thought was a weapon did you go into Mr. Warren's pockets?
 "A. Like I explained earlier, as my experience as a narcotics investigator, being in an area where drugs are sold and acting on the information that we had received, Mr. Warren being in front of the car, I determined through my experience that it could possibly contain — contain drugs and narcotics, and that's why it was removed from his pocket."
Wilson also testified that in his best judgment, during approximately 50 patdowns he had conducted during his 16 months as a narcotics officer, he had felt and removed similar plastic containers four or five times during similar searches. In response *Page 89 
to a question by Warren's attorney, he said that he had not found candy in any of the boxes, but he never said how many of the boxes he had felt and removed had contained illegal narcotics.
Warren argues, as he did before the Court of Criminal Appeals, that the police officers who searched and arrested him had received information from an unreliable informant and, therefore, lacked the reasonable suspicion required under Terry v. Ohio, 392 U.S. 1 (1968), to justify the initial investigative stop; and that Wilson exceeded the scope of a permissible Terry search when he retrieved the Tic Tac box from Warren's pocket during the patdown. The Court of Criminal Appeals held (1) that "the facts of this case created a reasonable suspicion that justified the investigatory stop of Warren, based on the information received from the informant and the independent police verification of [that] information" (783 So.2d at 79-80; (2) that "it was reasonably prudent for Detective Wilson to initiate the protective patdown of Warren" (783 So.2d at 81); (3) that "Detective Wilson's intrusion into Warren's pocket to retrieve the container fell outside the purpose of the protective patdown authorized by Terry" (783 So.2d at 82); and (4) that Wilson's seizure of the Tic Tac box was nevertheless justified on a different basis, i.e., the "plain-feel doctrine" announced by the United States Supreme Court in Minnesota v. Dickerson,508 U.S. 366 (1993). We agree with the Court of Criminal Appeals as to these first three holdings, and we see no need for any further discussion here of the issues to which those holdings related. We cannot agree, however, that Wilson's seizure of the Tic Tac box was justified by the plain-feel doctrine.
In Dickerson, the Supreme Court held that if a police officer detects contraband during a valid Terry patdown search, the officer may seize the contraband and it may be admitted into evidence. In stating the plain-feel doctrine, the Court rejected the contention that "plain feel" is not comparable to "plain view":
 "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.
 ". . . The very premise of Terry, after all, is that officers will be able to detect the presence of weapons through the sense of touch and Terry upheld precisely such a seizure. Even if it were true that the sense of touch is generally less reliable than the sense of sight, that only suggests that officers will less often be able to justify seizures of unseen contraband. Regardless of whether the officer detects the contraband by sight or by touch, however, the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures."
508 U.S. at 375-76 (footnotes omitted). The Court of Criminal Appeals has adopted the plain-feel doctrine in Alabama. See Huffman v. State,651 So.2d 78 (Ala.Crim.App. 1994) (holding that an officer had not exceeded the scope of Terry when, during a patdown, he recognized without any further examination that he felt a lump that had the configuration of a crack-cocaine rock); and Allen v. State, 689 So.2d 212
(Ala.Crim.App. 1995) (holding *Page 90 
that an officer had not exceeded the scope of Terry when he retrieved an envelope of marijuana that he simultaneously realized was not a weapon but recognized as an envelope containing marijuana).[1]
Dickerson establishes three prerequisites for a police officer's seizure of contraband pursuant to the plain-feel doctrine:
 1. The officer must have a valid reason for the search, i.e., the patdown search must be permissible under Terry.
 2. The officer must detect the contraband while the Terry search for weapons legitimately and reasonably is in progress.
 3. The incriminating nature of the object detected by the officer's touch must be immediately apparent
to the officer so that before seizing it the officer has probable cause to believe the object is contraband.
The first two prerequisites are met in this case. The Court of Criminal Appeals concluded, and we agree, that Wilson was conducting a permissible Terry search that legitimately and reasonably was still in progress when he detected the Tic Tac box in Warren's pocket. The difficulty in this case is deciding whether it is possible for a Tic Tac box to have an incriminating nature such that it was "immediately apparent" to Wilson that he had probable cause to believe before he seized it that the Tic Tac box contained contraband. The Court of Criminal Appeals concluded that Wilson had the necessary probable cause:
 "We conclude that, upon patting the outer surface of Warren's pants pocket and immediately recognizing the object therein to be a plastic container, Detective Wilson had, under the totality of [the] circumstances, probable cause to believe that the plastic container contained illegal narcotics. The following facts support our conclusion: (1) Captain Toney received information from a known informant that four or five black males were standing around a car that was parked in front of a specific address and were selling narcotics from the car; (2) the informant had provided Captain Toney with reliable information in the past concerning persons apparently involved in illegal drug transactions; (3) the basis of the informant's knowledge in the present case was firsthand, as the events the informant related to Captain Toney over the telephone were being observed by the informant as the telephone call was being made; (4) although the informant did not know the men involved in the apparent drug activity, his description of the men and the car they were standing around contained ample detail — down to a partial license plate number for the car; (5) Captain Toney relayed the contents of the informant's *Page 91 
tip to Detective Wilson, who arrived at the location designated by the informant within minutes of the informant's telephone call; (6) Detective Wilson's own observations upon arriving at the designated location verified many of the details supplied by the informant, including the number of suspects involved in the alleged drug activity, the race of those suspects, the fact that they were gathered around a car of a particular make, year, and color, and the car's partial license plate number; (7) while conducting an authorized protective patdown of Warren, who was among the group of men standing around the car, Detective Wilson encountered an object in Warren's pants pocket that he immediately recognized as a plastic container; (8) Detective Wilson was aware, based on his experience as a narcotics investigator, that illegal narcotics, in particular cocaine, are often carried in the type container that he felt on Warren's person; and (9) Detective Wilson provided ample testimony concerning his experience in narcotics cases and the basis for connecting the plastic container with the possession of cocaine.
 "We note that in People v. Champion, 452 Mich. 92, 549 N.W.2d 849 (1996), cert. denied, 519 U.S. 1081
(1997), the Michigan Supreme Court reached the same conclusion based upon facts similar to those in this case. In Champion, the Court held that the following facts provided the officer with probable cause to seize a pill bottle that he felt, between the defendant's leg and groin area, through the defendant's clothing while conducting a protective patdown: (1) the officer, who was patrolling a high drug-crime area, observed the defendant get out of a car and walk away upon seeing a patrol car and uniformed police officers; (2) the officer recognized the defendant and knew of his previous convictions for drug and weapons offenses; (3) the defendant had his hands tucked inside the front of his sweatpants and refused to take his hands out of his sweatpants despite being repeatedly asked to do so by the officer; and (4) the officer testified that he had considerable experience in drug cases and was aware that controlled substances are frequently carried in pill bottles like those he felt while patting down the defendant."
783 So.2d at 85.
Many of our sister states have also wrestled with the problem we address here. Can an officer's tactile perception of an object such as a Tic Tac box, a matchbox, a pill bottle, or a film canister give the officer probable cause to believe, before seizing it, that the object is contraband? As the Supreme Court of Pennsylvania stated, "[O]fficers experienced in drug enforcement have, more likely than not, seen drugs packaged in all kinds of material, ranging from cardboard to [Tic-Tac] containers to pill bottles to film canisters." Commonwealth v.Stevenson, 560 Pa. 345, 358, 744 A.2d 1261, 1268 (2000).[2] The Pennsylvania court, in holding that an officer's seizure of folded cardboard from a suspect's pocket was not made valid under *Page 92 
the plain-feel doctrine, observed that "[t]he mere fact that an officer has seen others use an object to package drugs . . . does not mean that once the officer feels that object during a patdown search of a different individual, he automatically acquires probable cause to seize the object under the plain-feel doctrine as something that is `immediately apparent' as contraband." Id.
The Supreme Court of Tennessee made a similar observation in State v.Bridges, 963 S.W.2d 487 (Tenn. 1997):[3]
 "[A] majority of this Court has determined that Officer Blackwell did not have probable cause to believe that the [pill bottle] he felt was contraband, and that he did not have probable cause to believe that the bottle contained contraband. In an affidavit filed as an exhibit to the suppression hearing Officer Blackwell described the patdown of the defendant as follows:
 "`For my protection I immediately identified myself and frisked Bridges for weapons. When I touched his right jacket pocket I immediately recognized a pill bottle, in that pocket, that is used by the majority of crack dealers to hold their crack cocaine. . . . The pill bottle contained crack cocaine. I charged him and also found a small bag of crack cocaine in the same pocket.'
". . . .
 "While Officer Blackwell said that he `immediately recognized' the item as a pill bottle, unless he was clairvoyant, he could not have discerned the contents from merely touching the container. Such a bottle, or one resembling it by touch, may enclose legal medication, candy, pins, film or any number of other small items. Officer Blackwell's testimony does not specify the objective basis upon which he relied for identification of the container itself or its possible contents as contraband. The record contains little evidence of Officer Blackwell's experience in drug cases and no evidence as to how he connected the container with the possession of cocaine. . . .
 "Under the proof in this record, it is evident that it was not . . . apparent to Officer Blackwell that the bottle contained contraband until it was removed from the defendant's pocket. This, however, is the very type of further manipulation forbidden by Dickerson."
963 S.W.2d at 495 (citations omitted) (emphasis added).
Federal courts also have studied this problem. In United States v.Ross, 827 F. Supp. 711 (S.D.Ala. 1993), aff'd, 19 F.3d 1446 (11th Cir. 1994) (table),[4] the court held *Page 93 
that an officer's discovery of a matchbox in the defendant's underwear during a patdown search did not justify the removal of the box and the seizure of cocaine in it. The court said:
 "[A]s the court reads Dickerson, the seizure of cocaine in this case would have been justified only
if, upon touching the material tucked inside Ross's underwear, the incriminating character of the material as illegal contraband was `immediately apparent.' Even if Dickerson were to permit a court to interpret `suspicions' as being tantamount to `knowledge,' the case would not admit of such construction in this case. That is so because of what Dinkins felt and suspected upon patting down Ross's pelvic area: Dinkins believed the item in Ross's underwear to be a box — he did not believe, sense, or suspect the box to be contraband, although he suspected that the box might contain illegal contraband. The only way that Dinkins could have verified his suspicions concerning the contents of the box was if he removed the box and looked inside. Neither Dickerson nor Terry [allows] such action. However reasoned and informed Dinkins's suspicions were in this case, they plainly were insufficient to allow the seizure of cocaine from Ross."
827 F. Supp. at 719 (footnotes omitted) (portions of third emphasis added).
There is a split of authority among the courts that have reviewed the seizure of a container such as a Tic Tac box, a matchbox, a pill bottle, or a film canister that, after being removed from the person of the suspect and examined, was found to contain contraband. A significant number of courts have held that such a seizure does not comply with the requirements of the plain-feel doctrine. See United States v. Gibson,19 F.3d 1449 (D.C. Cir. 1994) ("flat hard object" containing cocaine was seized because it did not correspond with anything officer expected to find in pants pocket; seizure held improper); United States v. Mitchell,832 F. Supp. 1073 (N.D.Miss. 1993) (court could not accept officers' testimony that contraband was "immediately apparent" upon officers' patting defendant's outer clothing; the six small plastic bags of crack cocaine had been placed in a white athletic sock that was in a brown paper sack in defendant's pocket); State v. Brown, 773 So.2d 742
(La.App. 2000) (no weapon or contraband "immediately apparent" when officers removed brown paper bag from defendant's pocket); Commonwealthv. Guillespie, 2000 Pa. Super. 16, 745 A.2d 654
(2000) (seizure of pill bottle from defendant's pocket was unlawful because bottle was not in a suspicious location on defendant's person and did not reveal an incriminating consistency through officer's tactile sense); State v. Myers, 756 So.2d 343 (La.App. 1999) (officer's intrusion into defendant's pocket to search for what he thought was a matchbox containing cocaine did not comply with plain-feel doctrine);State v. Abrams, 322 S.C. 286, 471 S.E.2d 716 (1996) (evidence obtained by seizure of Tylenol bottle suppressed because incriminating character of the object was not immediately apparent during patdown); State v.Parker, 622 So.2d 791 (La.App.), cert. denied, 627 So.2d 660 (La. 1993) (officer had no justification to seize matchbox from defendant's pocket and open it to search for drugs, because identity of contraband was not readily identifiable); Campbell v. State, 864 S.W.2d 223 (Tex.App.-Waco 1993) (seizure, from front pocket, of film canister containing cocaine held improper). But see State v. Lee, 126 Ohio App.3d 147, 709 N.E.2d 1217,discretionary appeal not allowed, 82 Ohio St.3d 1412, 694 N.E.2d 75
(1998) (trial court erroneously concluded that officer felt only container and not *Page 94 
contraband when officer had stopped defendant in high crime area at 1:00 A.M., defendant walked away as he put something in his pocket, defendant grabbed at officer's hand during patdown, pill bottle rattled when patted, and officer said he knew pill bottles were commonly used to carry illegal drugs); State v. Rushing, 935 S.W.2d 30
(Mo. 1996), cert. denied, 520 U.S. 1220 (1997) (seizure of cylindrical medicine bottle from defendant's pocket upheld; suspicious transaction had been observed, neighborhood had reputation as drug-trafficking area, and officer had knowledge about, and experience with, commonly used drug containers); Champion, 452 Mich. at 110-12, 549 N.W.2d at 858-59
(seizure of pill bottle upheld — officer with 20 years' experience in narcotics work searched defendant known to him; defendant was stopped in high-crime area; and officer discovered pill bottle in defendant's groin area[5]). Compare cases in which the officer could feel the contraband itself or could feel the contraband through packaging, e.g.,United States v. Craft, 30 F.3d 1044 (8th Cir. 1994) (seizure of hard, compact packages of heroin taped around defendant's ankles upheld);United States v. Hughes, 15 F.3d 798 (8th Cir. 1994) (seizure of "small lumps" believed to be crack cocaine upheld); State v. Trine, 236 Conn. 216,673 A.2d 1098 (1996) (officer who testified as to his experience with narcotics felt rock of cocaine in pocket); Andrews v. State,221 Ga. App. 492, 471 S.E.2d 567 (1996) (officer with seven years' experience who had made thousands of arrests immediately knew object he felt was cookie of crack cocaine); People v. Mitchell, 165 Ill.2d 211, 209 Ill. Dec. 41, 650 N.E.2d 1014 (1995) (seizure of piece of cocaine rock inside plastic "baggie" upheld); Commonwealth v. Dorsey,439 Pa. Super. 494, 654 A.2d 1086 (1995) (seizure of lump in plastic bag upheld); State v. Wilson, 112 N.C. App. 777, 437 S.E.2d 387 (1993) (seizure of lumps in package in breast pocket upheld because the nature of the contraband was apparent); State v. Buchanan, 178 Wis.2d 441,504 N.W.2d 400 (1993) (seizure from waistband of plastic bag containing cocaine upheld).
After considering both lines of cases that have reviewed the difficult issue presented in this case, we conclude that the better-reasoned view is that espoused by those courts holding that if the object detected by the officer's touch during a Terry search is a hard-shell, closedcontainer, then the incriminating nature of any contents of that container cannot be immediately apparent to the officer until he seizes it and opens it. In such a situation, the officer cannot satisfy theDickerson requirement that the officer have probable cause to believe, before seizing it, that the object is contraband. Although the plain-feel doctrine has a field of operation under circumstances such as those discussed by the Court of Criminal Appeals *Page 95 
in Allen and Huffman, supra, in which the nature of the contraband itself was immediately apparent to the officer, the plain-feel doctrine does not justify Wilson's seizure of the Tic Tac box from Warren's pocket in this case.[6] The Court of Criminal Appeals erred in affirming the trial court's denial of Warren's motion to suppress.
The judgment of the Court of Criminal Appeals is reversed, and the cause is remanded for an order or further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, COOK, SEE, and ENGLAND, JJ., concur.
JOHNSTONE, J., concurs specially.
SEE, J., concurs in the result.
HOOPER, C.J., and MADDOX, J., dissent.
BROWN, J., recuses herself.*
* Justice Brown represented the State of Alabama in this case while she was serving as an assistant attorney general.
[1] This Court discussed the plain-feel doctrine in Ex parte James, [Ms. 1980820, June 23, 2000] ___ So.2d ___ (Ala. 2000), in which we held that an officer had improperly seized marijuana cigarettes from the defendant James's pocket. Our holding in James was not based on the plain-feel doctrine, however. In James, the officer testified that as he was conducting a Terry patdown search James started to put his hand into his pants pocket. As James pulled his hand out, the officer said that he reached into James's pocket and found marijuana cigarettes. The officer testified that he did not pat the outside of James's pocket before he reached into it and that he did not feel any weapons during the patdown search. Because the officer, before he put his hand into the pocket and removed the marijuana cigarettes, did not pat down the outer surface of James's pocket to determine if a weapon was present and therefore did not feel any weapon or "plain-feel" object that would warrant further intrusion, we concluded that the plain-feel doctrine did not apply because the officer did not inadvertently discover the contraband pursuant to a Terry patdown search.
[2] Stevenson arose out of suspicious circumstances, as did the case before us. An officer on patrol saw the defendant enter a residence that had been the subject of numerous complaints regarding drug activity. The officer stopped the defendant for a traffic violation. During the course of a Terry search, the officer felt three hard packages of folded paper or cardboard in the defendant's pants pocket. The court noted that "cardboard or folded paper may be in an individual's pocket for any number of legitimate reasons, and may contain, if anything at all, any number of legitimate items."560 Pa. at 358 n. 6, 744 A.2d at 1268 n. 6.
[3] In Bridges, also a case involving suspicious circumstances, the officer received a telephone call from a confidential informant, who told him that the defendant was at the time selling drugs at a club. The defendant was present at the club when the officer arrived. The officer said he frisked the defendant for weapons. During that search, the officer felt a pill bottle in the defendant's pocket.
[4] In Ross, officers stopped the defendant's car after they had observed him circling a motel known to be an area of high drug trafficking. The defendant was shivering in the cold January night air, so an officer performed a Terry search so that the defendant could sit in a patrol car. During the search, the officer felt a box tucked into the defendant's groin area. The officer identified it as a hollow matchbox. He testified that he was suspicious because of the box's location in the groin area, that drug traffickers were widely known to carry drugs in that area of the body, and that it was common for drug traffickers to carry contraband in small plastic boxes, steel boxes, or matchboxes. The officer also said that approximately 50-100 times he had found contraband concealed in small matchboxes tucked in the groin area.
[5] We note that Champion, relied on by Chief Justice Hooper in his dissent and by the Court of Criminal Appeals, presented a scenario factually different from that presented in the case before us. InChampion, the law-enforcement officer testified that during his patdown search, he felt "a pill bottle stuck down between [Champion's] legs."452 Mich. at 110 n. 9, 549 N.W.2d at 858 n. 9. No comparable circumstance is here presented. In the case before us, Wilson felt the Tic Tac box in Warren's pants pocket. The dissent also relies uponUnited States v. Salazar, 945 F.2d 47 (2d Cir. 1991), a case that was decided before Dickerson. Salazar is cited once in Dickerson as one of several cases recognizing the "plain-feel" analog to the plain-view rule announced in Coolidge v. New Hampshire, 403 U.S. 443 (1971) (opinion of Stewart, Douglas, Brennan, and Marshall, JJ.) The Court in Dickerson
made no effort to harmonize or reconcile its holding there with the holdings in such cases as Salazar.
[6] Chief Justice Hooper's dissenting opinion complains of "shackling of our law-enforcement personnel." 783 So.2d at 19. The framers of both the United States Constitution and the Alabama Constitution saw fit to guarantee citizens freedom from illegal searches and seizures (see U.S. Const. amend. IV; Ala. Const. of 1901, Art. I, § 5), and we hereby enforce that guaranty today.