Edward Carl Cannon pleaded guilty to possession of methamphetamine, a controlled substance, in violation of § 13A-12-212(a)(1), Ala. Code 1975. Pursuant to the terms of an agreement between Cannon and the State, Cannon was sentenced to five years in prison; that sentence was split, and he was ordered to serve one year in prison, followed by four years of supervised probation. The trial court also ordered Cannon to pay $2,000 pursuant to the Drug Demand Reduction Assessment Act and to pay a $100 assessment to the Department of Forensic Sciences Trust Fund.
As part of the plea agreement, Cannon reserved the right to appeal from the trial court's denial of his motion to suppress the evidence taken from his pants pocket by a Sheriff's deputy. The trial court held a hearing on Cannon's motion to suppress. The testimony taken during the hearing showed the following.
On April 6, 2004, Lee County Sheriff's Deputy Jessica Daley responded to a report of an assault. When she arrived at the scene, she found Cannon lying on the ground with a bloody towel covering his head. Cannon had cuts on his hands and a large cut on his forehead.
Daley called for the paramedics. She asked Cannon his name, but he did not tell her that information. Daley asked him for identification. She testified that Cannon told her he had identification and that his right arm was hurting, but he kept reaching for his right pants pocket. She said that he told her his identification was in his pants pocket and "that it was okay for me to go ahead and get it." (R. 34.) Daley testified that Cannon was conscious and coherent when he gave her permission to get his identification from his pocket.
Daley said she assumed Cannon's identification was in the right front pants pocket that he had appeared to be reaching for, so she patted down that pocket for her safety. She said that when she did so, she felt a "tube-like canister" that was consistent with a film canister. (R. 35.) She knew that the container could not hold a driver's license.
Daley testified that, based upon her training and experience, she believed the object in Cannon's pocket might contain drugs, so she reached inside his pocket and pulled out the container. The canister was "clear white" and "it had something red inside of it." (R. 35.) Daley could not identify what was in the canister, so she opened it. She said without opening the canister she could not identify its contents and could not say that what was inside was illegal. (R. 45-46.) When she opened the canister, Daley found four small zip-lock plastic baggies. Three of the baggies contained residue; one contained a white powdery substance that Daley believed to be a controlled substance. Cannon was taken from the scene by ambulance to East Alabama Medical Center. *Page 970 
The suppression hearing was held outside the presence of the jury.
 "`"Where evidence is presented to the trial court ore tenus in a nonjury case, a presumption of correctness exists as to the court's conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Odom v. Hull, 658 So.2d 442 (Ala. 1995). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment. Ex parte Board of Zoning Adjustment of the City of Mobile, 636 So.2d 415 (Ala. 1994)."
"`[Ex parte Agee], 669 So.2d [102,] at 104 [(Ala. 1995)]. "Where the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and [this Court] will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court's application of the law to those facts." Stiles v. Brown, 380 So.2d 792,794 (Ala. 1980) (citations omitted).'"
Ex parte Jackson, 886 So.2d 155, 159 (Ala. 2004), quoting State v. Hill, 690 So.2d 1201, 1203
(Ala. 1996).
Cannon contends that in retrieving the canister from Cannon's pants pocket and then opening the canister to see what was inside, Daley executed an illegal search and seizure and that the evidence retrieved was due to be suppressed. While acknowledging that he gave Daley permission to retrieve his identification from his pocket, Cannon contends that Daley exceeded the scope of his consent when she pulled the canister — which she admitted could not have held his driver's license — from his pocket and then proceeded to open the canister to determine what was inside.
In Ex parte Warren, 783 So.2d 86 (Ala. 2000), the Alabama Supreme Court addressed the issue of when police could open a closed canister discovered during a search conducted pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889 (1968). In Warren, police officers received information from a confidential informant that a group of men were at a certain location, standing around a white car selling drugs. Police officers arrived at the scene, saw the men standing around the car that the confidential informant had described, and asked the men their names. The police then began to conduct patdown searches of the men to look for weapons.
One of the officers said that during his patdown of Warren's front pants pocket during which he was feeling for a weapon, he felt instead what was described as a "plastic box."Warren, 783 So.2d at 88. The box turned out to be a container ordinarily used to hold "Tic Tac" brand breath mints, but in this case, it was holding small rocks of crack cocaine.Id.
The officer said he removed the Tic Tac box from Warren's pocket, not because he thought it was a weapon but because, he said, "`[t]hrough my experience as being an investigator in narcotics, I believed that it did, in fact, contain drugs because I have ran [sic] across the same type plastic containers in the past that have came [sic] off defendants that did, in fact, hold cocaine.'" Id.
The Alabama Supreme Court determined that the police officer's seizure of the Tic Tac box violated Warren's Fourth Amendment rights. In reaching its decision, the Court reviewed similar cases from numerous jurisdictions, some of these cases finding such a seizure proper and some finding such a seizure illegal. *Page 971 
 "After considering both lines of cases that have reviewed the difficult issue presented in this case, we conclude that the better-reasoned view is that espoused by those courts holding that if the object detected by the officer's touch during a Terry search is a hard-shell, closed container, then the incriminating nature of any contents of that container cannot be immediately apparent to the officer until he seizes it and opens it. In such a situation, the officer cannot satisfy the [Minnesota v.] Dickerson, [508 U.S. 366 (1993),] requirement that the officer have probable cause to believe, before seizing it, that the object is contraband. Although the plain-feel doctrine has a field of operation under [certain] circumstances . . . in which the nature of the contraband itself was immediately apparent to the officer, the plain-feel doctrine does not justify [the officer's] seizure of the Tic Tac box from [the defendant's] pocket in this case."
Ex parte Warren, 783 So.2d at 94-95 (emphasis in original); see also Ex parte Tucker, 667 So.2d 1339,1346 (Ala. 1995) ("The fact that an officer has first-hand experience with film canisters containing narcotics cannot provide probable cause to open each film canister he may encounter."), distinguished by Ex parte Kelley,870 So.2d 711 (Ala. 2003) (totality of the circumstances, including surveillance of a drug transaction, established probable cause to seize a Tic Tac box containing illegal drug).
In this case, Cannon gave Daley consent to retrieve his identification from his pocket. Before reaching into Cannon's pocket, Daley did a patdown search for her safety. While doing the patdown, she felt an object in one pocket that she knew was not Cannon's driver's license but that felt like a film canister. Just as the officer who testified in Warren
explained, Daley said that based upon her training and experience, she knew that people kept illegal drugs in such canisters. When she could not see to identify the contents of the canister pulled from Cannon's pocket, she opened it and found what she believed to be a controlled substance. Nonetheless, nothing in the record shows that the nature of the contraband found in the canister was immediately apparent when Daley pulled it from Cannon's pocket.
The Warren Court found that despite the officer's training and experience, from which the officer knew that drugs were often kept in small plastic containers like the one discovered during the patdown search of Warren, and despite the fact that the search was based on an informant's tip that drugs were being sold by the men who were with Warren, the seizure of the plastic Tic Tac box was not justified because the nature of the contraband itself was not immediately apparent to the officer who conducted the patdown search.
In this case, Daley was responding to a request to help the victim of an assault. Nothing in the record indicates that there was a reason to suspect the presence of illegal drugs. Also, contrary to the State's assertion in its appellate brief, nothing in the record indicates that Daley thought that Cannon was "on the verge of dying." (State's brief at 7.) According to Daley, Cannon was conscious and understood what was being asked of him. Cannon gave Daley permission to reach into his pocket to retrieve his identification, and Daley also patted down his pocket to ensure there were no weapons. What she felt during her patdown search was a tube that felt like a film canister. Daley stated unequivocally that she knew Cannon's identification would not be in the film canister, yet she pulled the canister from Cannon's *Page 972 
pocket. She also stated that she could not identify the contents of the canister without opening it. Although Daley suspected that the canister contained a controlled substance, it was not immediately apparent that the canister did, in fact, contain contraband.
Based upon the authority of Ex parte Warren, we hold that Daley was not justified in retrieving the film canister from Cannon's pocket because she had been given permission only to retrieve his identification. Further, there was no reason for Daley to open the canister because it was not immediately apparent that it contained contraband. Therefore, the trial court erred in denying Cannon's motion to suppress the evidence Daley seized from Cannon's pants pocket.
For the reasons set forth above, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
BASCHAB, P.J., and McMILLAN, SHAW, and WISE, JJ., concur.