JOINER, Judge.
Richard Tolbert pleaded guilty to the unlawful possession of a controlled substance, namely dihydroeodeinone (brand name Lortab), in violation of § 13A-12-212, Ala.Code 1975. Tolbert was sentenced to 15 years’ imprisonment pursuant to the Alabama Habitual Felony Offender Act. Tolbert’s sentence was suspended, and he was placed on five years’ probation. Tolbert was ordered to pay court costs, a $100 erime-victims-compensation assessment, a $100 forensic-trust assessment, and a $1,000 drug-demand-reduction assessment, to be retaxed upon completion of *748 a drug-rehabilitation course. Tolbert reserved the right to appeal the circuit court’s denial of his motion to suppress the discovery of the controlled substance that resulted in his guilty plea and conviction. This appeal ensued. We affirm.
At Tolbert’s suppression hearing, Officer Phillip Harris testified that on the night of November 21, 2009, he and his partner, Officer Sandy Jackson, were on duty as plain-clothed police officers investigating illegal drug activity in the West Police Precinct of Birmingham. Officer Harris stated that his operation was part of a larger police department initiative during the end of 2009 to reduce illegal drug activity. Officer Harris said that he and Officer Jackson parked their unmarked vehicle near the intersection of Ninth Street and Franklin Avenue in an area where the police department had recently received numerous complaints of illegal drug activity. Officer Harris testified that he observed a black Cadillac automobile with three occupants parked 15 to 20 feet from his vehicle. Officer Harris stated that he observed an occupant in the driver’s seat, the passenger seat, and the backseat of the Cadillac. Officer Harris said that he was positioned on the passenger side of the Cadillac and that he observed the passenger side of the vehicle.
Officer Harris testified that he witnessed numerous vehicles pull beside the passenger side of the Cadillac and stated that he observed hand-to-hand transactions between those vehicles and the front passenger window of the Cadillac. According to Officer Harris, someone from the other vehicles “would hand an unknown amount of cash and somebody out of the Cadillac would hand an unknown object back.” Officer Harris stated that based on his narcotics training and field experience, he suspected illegal drug deals were being conducted from the Cadillac, prompting him to radio a uniformed police unit in the area. Officer Harris said that the Cadillac then drove from the scene but was pulled over by a responding police unit shortly thereafter at the intersection of Tenth Street and Alabama Avenue. Officer Harris testified that after responding officers pulled over the Cadillac, he observed Tolbert as the passenger in the Cadillac. Officer Harris identified Tolbert in court as the passenger.
Officer Sandy Jackson testified that on November 21, 2009, he and Officer Harris observed several vehicles parked behind a McDonald’s fast-food restaurant off Lomb Avenue in Birmingham and saw several males congregating in the area. Officer Jackson stated that he and Officer Harris then parked their unmarked vehicle nearby to observe. Officer Jackson said that he then saw a black Cadillac pull onto the scene. According to Officer Jackson, several cars then pulled up to the passenger side of the Cadillac in sequence, and occupants of the cars then conducted hand-to-hand transactions with someone in the Cadillac. Officer Jackson testified that his experience observing illegal narcotics transactions led him to believe that illegal narcotics transactions were occurring.
Officer Jackson stated that he then radioed a local police unit that subsequently pulled over the Cadillac. Officer Jackson said that after the Cadillac was pulled over, he observed the passenger get out of the vehicle. Officer Jackson identified Tolbert as the passenger in court. Officer Jackson testified that he did not identify Tolbert before Tolbert got out of the Cadillac after it was pulled over by police.
Officer Jacorey Foster testified that he responded to Officer Harris and Officer Jackson’s radio call and pulled over a Cadillac Deville near Lomb Avenue. Officer Foster identified Tolbert as the passenger in the vehicle and stated that he asked *749 Tolbert if he had any illegal contraband on his person or if there was any illegal contraband in the vehicle.[1] Officer Foster said that he asked Tolbert to step out of the vehicle and that Tolbert complied with his request. Officer Foster testified that he then explained to Tolbert “what was going on” and asked Tolbert if he could perform a patdown on him to determine if Tolbert was carrying any weapons. Officer Foster stated that Tolbert consented to the patdown.
Officer Foster said that, in the course of the patdown, he discovered plastic bags in Tolbert’s front left pants pocket containing “a white rock-like substance and three pills.” Officer Foster testified that when conducting the patdown on Tolbert, the bags did not feel like a gun or knife. Officer Tolbert did not testify that he suspected that the plastic bags contained drugs upon feeling them during the pat-down.[2] Officer Foster stated that he then called poison control to discern the composition of the pills and that he arrested Tolbert thereafter.
The sole issue Tolbert raises on appeal is the legality of the warrantless search resulting in the discovery of the evidence forming the basis of his conviction. Because the facts are not in dispute, our review is de novo. See, e.g., Cannon v. State, 985 So.2d 968, 970 (Ala.Crim.App.2007).
Regarding warrantless searches and seizures,
“ ‘ “[t]his court has long held that war-rantless searches are per se unreasonable, unless they fall within one of the recognized exceptions to the warrant requirement. See, e.g., Chevere v. State, 607 So.2d 361, 368 (Ala.Cr.App.1992). These exceptions are: (1) plain view; (2) consent; (3) incident to a lawful arrest; (4) hot pursuit or emergency; (5) probable cause coupled with exigent circumstances; (6) stop and frisk situations; and (7) inventory searches. Ex parte Hilley, 484 So.2d 485, 488 (Ala.1985); Chevere, supra, 607 So.2d at 368.” ’
“State v. Mitchell, 722 So.2d 814 (Ala.Cr.App.1998), quoting Rokitski v. State, 715 So.2d 859 (Ala.Cr.App.1997).”
State v. Otwell, 733 So.2d 950, 952 (Ala.Crim.App.1999).
The State argues initially that the controlled substance in the plastic bags in Tolbert’s pocket was discovered by a law *750 ful “stop-and-frisk” search under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See also Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); Ex parte Warren, 783 So.2d 86, 90 (Ala.2000) (discussing the “plain-feel” doctrine announced in Dickerson and recognizing that contraband discovered during a valid Terry search maybe seized if “the incriminating nature of the object detected by the officer’s touch ... [is] immediately apparent to the officer so that before seizing it the officer has probable cause to believe the object is contraband”). We disagree.
Officer Foster testified that when patting down Tolbert, he did not believe that the object in Tolbert’s pants pocket, which was later revealed to be the bags containing a controlled substance, was a weapon. Moreover, Officer Foster never testified that, when patting down Tolbert, it was immediately apparent to him that the object in Tolbert’s pants pocket was contraband before he removed it from the pants pocket. Consequently, neither Terry nor Dickerson authorized the search and seizure of the controlled substance in this case. See also Davis v. State, 901 So.2d 759, 765 (Ala.Crim.App.2004).
Although neither Terry nor Dickerson authorized the search and seizure in this case, we may affirm the trial court’s judgment “on any valid ground or rationale, even one rejected or not considered by the trial court, so long as notice of the ground, and an opportunity to respond is shown by the record to have been available, to satisfy the minimum requirements of due process.” Ex parte Kelley, 870 So.2d 711, 714 (Ala.2003). In the present case, the search and seizure were justified under the search-incident-to-a-lawful-arrest exception to the warrant requirement.
In Woods v. State, 695 So.2d 636, 640 (Ala.Crim.App.1996), this Court noted:
“‘Whether there is probable cause to merit a warrantless search and seizure is to be determined by the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). “Probable cause exists where all the facts and circumstances within the officer’s knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and that contraband would be found in the place to be searched.” Sheridan v. State, 591 So.2d 129, 130 (Ala.Crim.App.1991).’ ”
Additionally, in State v. Montgomery, 968 So.2d 543, 548 (Ala.Crim.App.2006), this Court stated:
‘“Probable cause to support a war-rantless arrest must exist at the time of the arrest. Davis v. State, 507 So.2d 1023 (Ala.Cr.App.1986). Probable cause exists if facts and circumstances known to the arresting officer are sufficient to warrant a person of reasonable caution to believe that the suspect has committed a crime. United States v. Rollins, 699 F.2d 530 (11th Cir.) cert. denied, 464 U.S. 933, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983). “Probable cause to arrest is measured against an objective standard and, if the standard is met, it is unnecessary that the officer subjectively believe that he has a basis for the arrest.” Cox v. State, 489 So.2d 612 (Ala.Cr.App.1985). The officer need not have enough evidence or information to support a conviction in order to have probable cause for arrest. Only a probability, not a prima facie showing, of criminal activity is the standard of probable cause. Stone v. State, 501 So.2d 562 (Ala.Cr.App.1986).
“Dixon v. State, 588 So.2d 903, 906 (Ala.1991).”
*751 In the instant case, Officer Harris’s testimony and Officer Jackson’s testimony were sufficient to prove probable cause to suspect that illegal drug distribution had occurred from the vehicle in which Tolbert was a passenger based on the totality of the following circumstances: (1) their observation of a street-side gathering at night in an area where the police department had recently received numerous complaints of illegal drug activity; (2) their testimony that they had specialized training and experience in observing and detecting illegal drug transactions; and (3) their observation of a succession of furtive hand-to-hand cash transactions between Tolbert’s vehicle and other vehicles that their training and experience led them to believe were illegal drug transactions. See Ex parte Tucker, 667 So.2d 1339, 1345 (Ala.1995) (“The fact that an area is known for crime may serve to create a reasonable suspicion in the minds of the police that may support a finding of probable cause.”); Ex parte Kelley, 870 So.2d at 723 (“ ‘[0]ur cases have recognized that a police officer may draw inferences based on his own experience in deciding whether probable cause exists.’ ... ‘A trial judge views the facts of a particular case in light of the distinctive features and events of the community; likewise, a police officer views the facts through the lens of his police experience and expertise. The background facts provide a context for the historical facts, and when seen together yield inferences that deserve deference.’ ” (quoting Ornelas v. United States, 517 U.S. 690, 699-700, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996))).
Additionally, although Officer Harris’s and Officer Jackson’s testimony reveals that they could not identify Tolbert at the time they observed the suspicious transactions conducted from the Cadillac, both officers testified that the transactions occurred from the front passenger window of the Cadillac. Officer Harris and Officer Jackson testified that they identified Tol-bert as the front-seat passenger when Tol-bert got out of the Cadillac after Officer Foster pulled the vehicle over shortly after Harris and Jackson radioed Foster. Officer Harris’s and Officer Jackson’s observations were sufficient to establish probable cause that Tolbert was more than an innocent passenger and that Tol-bert participated in an illegal drug deal or at least exerted constructive possession over the controlled substances suspected of being exchanged. See Black v. State, 74 So.3d 1054, 1060 (Ala.Crim.App.2011) (“ ‘ “Constructive possession of contraband may be shown by proof of dominion and control over a vehicle containing contraband .... ” A controlled substance may be jointly possessed, and possession may be established by circumstantial as well as direct evidence.... “Proximity to illegal drugs, presence on the property where they are located, or mere association with persons who do control the drugs may be sufficient to support a finding of possession when accompanied with testimony connecting the accused with the incriminating surrounding circumstances.” ’ ” (citations omitted)).
Officer Foster stopped the vehicle in which Tolbert was traveling and searched Tolbert based on the radio call from Officer Harris and Officer Jackson. In Ex parte Boyd, 542 So.2d 1276, 1284 (Ala.1989), the Alabama Supreme Court stated:
“It is a ‘well-recognized principle that, where a group of officers is conducting an operation and there is at least minimal communication among them, [the appropriate course is to] look to the collective knowledge of the officers in determining probable cause.’ ‘[P]robable cause may emanate from the collective knowledge of the police, though the officer who performs the act *752 of ... searching may be far less informed.’ ”
(Citations omitted.) Thus, based on his communication with Officers Harris and Jackson, Officer Foster had probable cause to stop the vehicle and had probable cause to believe that Tolbert had committed a crime.
In Maryland v. Pringle, 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003), the United States Supreme Court found that where the police had probable cause to suspect that a vehicle was being used to facilitate recent illegal drug distribution, the police also had probable cause to arrest each occupant of the vehicle. Pringle was the front-seat passenger in an automobile stopped by police. The automobile contained two other occupants: the driver and a backseat passenger. Police conducted a consensual search of the automobile that yielded $763 cash and five plastic baggies containing cocaine. The Court concluded that the evidence found in the search indicated a likelihood of drug dealing. The Court stated that the likelihood of drug dealing allowed the police to infer a common enterprise among the occupants of the vehicle, creating probable cause to arrest Pringle. The Court stated:
“Here we think it was reasonable for the officer to infer a common enterprise among the three men. The quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him.”
Pringle, 540 U.S. at 373. The Court further stated:
“We think it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine. Thus, a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly.”
Pringle, 540 U.S. at 372. See also Montgomery, 968 So.2d at 550-51 (quoting Melson v. State, 775 So.2d 857, 879 (Ala.Crim.App.1999)):
“ ‘The probable cause standard does not require an arresting officer to rule out all other possible suspects before he or she detains a particular individual. See State v. Johnson, 682 So.2d 385, 391 (Ala.1996) (Maddox, J., concurring specially); see also Darden v. State, 571 So.2d 1272, 1279-80 (Ala.Cr.App.1990), quoting 1 W. LaFave, Search and Seizure § 3.2(e) at 591-92 n. 148 (2d ed. 1987) (“ ‘If the function of arrest were merely to produce persons in court for purposes of their prosecution, then a more-probable-than-not-test would have considerable appeal. But there is also an investigative function which is served by the making of arrests.’ ” (Footnote omitted.)).’ ”
In the present case, as noted, Officer Foster had probable cause to conclude that illegal drug distribution was taking place in the automobile in which Tolbert was traveling, and therefore Officer Foster also had probable cause to believe that Tolbert had committed the crimes of possession and distribution of a controlled substance. Accordingly, Officer Foster had probable cause to arrest Tolbert, and he was permitted to perform a search incident to a lawful arrest.
At the time Officer Foster discovered the controlled substance in Tolbert’s pocket, he had not formally placed Tolbert under arrest. In Blake v. State, 772 So.2d 1200, 1207 (Ala.Crim.App.2000), this Court stated the following:
“A warrantless search preceding arrest is reasonable under the Fourth Amend *753 ment, so long as probable cause to arrest existed before the search and the arrest and search are substantially contemporaneous. Rawlings v. Kentucky, 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 683 (1980). See United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The search of Blake’s person (and the seizure of the cocaine from his pocket) was, therefore, valid as a search incident to establishment of probable cause to arrest, because the officers had probable cause to arrest Blake for possession of marijuana before he was even patted down by Officer Spears, and the arrest and search were sufficiently contemporaneous.”
Because Officer Foster had probable cause to arrest Tolbert at the time he performed the search and because he arrested Tol-bert immediately upon discovering the controlled substance, the search and seizure were valid as incident to a lawful arrest.[3] Blake, supra. See also Rawlings 448 U.S. at 111 (“Where the formal arrest followed quickly on the heels of the challenged search of a petitioner’s person, we do not believe it particularly important that the search preceded the arrest rather than vice versa.”).
Although the record appears to indicate that Officer Foster intended to perform a Terry search limited to a search of Tolbert for weapons in order to protect his and other officers’ safety, Officer Foster’s subjective intentions are irrelevant. As noted above, Officer Foster was objectively authorized to search Tolbert incident to a lawful arrest, and therefore the discovery and seizure of a controlled substance from Tolbert’s pants pocket was legally permissible. See State v. Gargus, 855 So.2d 587, 590 n. 2 (Ala.Crim.App.2003):
“Gargus argues, on the other hand, that this Court should not consider whether the search was valid as a search incident to a lawful arrest because, she says, ‘[tjhere is no testimony in the record from the arresting officer that he at any time considered this search a search incident to a lawful arrest.’ (Gargus’s appellate brief at p. 15.) However, it is well settled that ‘ “[a]s long as the police officer is doing only what is objectively authorized and legally permitted, the officer[’]s subjective intent in doing it is irrelevant.” ’ Woods v. State, 695 So.2d 636, 640 (Ala.Crim.App.1996), quoting Hutcherson v. State, 677 So.2d 1174, 1184 (Ala.Crim.App.1994), rev’d on other grounds, 677 So.2d 1205 (Ala.1996).”
Accordingly, the circuit court did not err in denying Tolbert’s motion to suppress. *754 The judgment of the circuit court is affirmed.
AFFIRMED.
WELCH, P.J., and KELLUM and BURKE, JJ., concur. WINDOM, J., concurs in the result.

. Officer Foster did not indicate whether Tol-bert responded to these questions.

. Officer Foster testified as follows regarding his discovery of the pills:
"Q. [PROSECUTOR:] And what happened when you patted him down? Did you discover anything?
"[DEFENSE COUNSEL]: Objection, Your Honor. She is leading the witness.
"THE COURT: Don’t lead. That is a pretty straightforward question. Go ahead and answer the question.
"A. [OFFICER FOSTER:] Yes.
"Q. [PROSECUTOR:] What?
"A. The defendant had plastic bags in his front left pants pocket.
"Q. Okay. And did you have any knowledge of what was in the plastic bag?
"A. Yes’ ma’am.
"[DEFENSE COUNSEL]: Objection, Your Honor, unless he is — I don’t think he is qualified to testify, is he, as to what was in the plastic bag, unless he is a chemist.
"[PROSECUTOR]: If you could let me get there.
"[DEFENSE COUNSEL]: Go ahead.
"Q. [PROSECUTOR:] What was it that you saw in the plastic bag?
"A. [OFFICER FOSTER:] It was a plastic bag containing a white rock-like substance and three pills.
“Q. Okay. Did you have — do you have any idea what those pills were?
"A. Yes, ma’am. I called Poison Control — ”
(R. 36-38.)

. We note that a search incident to a lawful arrest permits a broader search than a stop- and-frisk Terry search.
"The distinction in purpose, character, and extent between a search incident to an arrest and a limited search for weapons is that a search for weapons in the absence of probable cause to arrest must be limited to what is necessary to discover weapons that might be used to harm the officer or others nearby; a search incident to an arrest, on the other hand, can 'involve a relatively extensive exploration of the person.’ Mathews v. State, 534 So.2d 1129, 1131 (Ala.Crim.App.1988)”
Vinson v. State, 843 So.2d 221, 227 (Ala.Crim.App.2000).
" '[I]n the case of a lawful custodial arrest!,] a fuh search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable” search under that Amendment.’ United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973).”
Mathews v. State, 534 So.2d 1129, 1131-32 (Ala.Crim.App.1988).