MOORE, Chief Justice
(dissenting).
In my estimation, the frisk of petitioner T.G. in this case very likely violated the Fourth Amendment to the United States Constitution. I would therefore grant his petition for a writ of certiorari to review the unpublished memorandum of the Court of Criminal Appeals affirming his conviction, T.G. v. State (No. CR-13-1068, Sept. 26, 2014), — So.3d - (Ala.Crim.App.2014) (table).

Background

In January 2014, two Birmingham police officers, patrolling a “high crime area,” pulled over a car for failing to yield the right-of-way. T.G., the 17-year-old driver, produced a driver’s license, as did the two passengers. On checking the licenses, the officers discovered that the female passenger had an active warrant with the City of Birmingham. The officers ordered all the passengers out of the car and frisked the two male passengers. According to the unpublished memorandum issued by the Court of Criminal Appeals, Officer Josh Phillips, when patting down T.G., “discovered a cigarette box in the top of his jacket and one in his pocket.” Officer Phillips opened the cigarette boxes and in one of them found pills that were later determined to be a Schedule IV controlled substance.
*323 During the criminal proceedings, T.G. filed a motion to suppress the pills on the basis that the initial patdown was illegal. At the suppression hearing, Officer De-marcus Blanding stated that T.G. had done nothing to prompt the frisk. Verified Statement of Facts, at 2. Reserving the right to appeal the denial of his motion to suppress, T.G. pleaded true to a delinquency petition. The trial court sentenced T.G. to probation. The Court of Criminal Appeals affirmed. T.G. now seeks certiorari review, arguing that the frisk of his person violated the Fourth Amendment.

Discussion

I believe T.G. has stated a sufficient conflict with precedent to warrant review of the constitutionality of the frisk at its inception. To stop a citizen and perform a frisk for weapons on less than probable cause that a crime has been committed, a police officer must have reasonable suspicion that the suspect is armed and dangerous. Terry v. Ohio, 392 U.S. 1, 24, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion requires “specific and ar-ticulable facts,” not a mere “inchoate and unparticularized suspicion or ‘hunch.’ ” Terry, 392 U.S. at 21, 27. “The ‘narrow scope’ of the Terry exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked....” Ybarra v. Illinois, 444 U.S. 86, 94, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (emphasis added).
Nonetheless, even if I were to concede that the frisk was constitutional at its inception, the opening of the cigarette boxes discovered during the frisk violated the Fourth Amendment by exceeding the permissible scope of a Terry-stop search for weapons. The Court of Criminal Appeals, however, noted that T.G. had not presented this specific sub-issue for review and thus had waived it: “T.G. challenges only the justification for the initial patdown; he does not challenge Officer Phillips’s further search of the cigarette box recovered from T.G.’s person, and we do not address it.” Although “it is this Court’s practice not to address issues not presented on appeal,” Travelers Indem. Co. of Connecticut v. Miller, 86 So.3d 338, 347 (Ala.2011), I believe that the search of the cigarette boxes is a subsidiary issue fairly included within the issue T.G. raised regarding the legality of the search of his person under the Terry exception to the Fourth Amendment. Once the patdown revealed no weapons, the justification for the Terry search dissipated, rendering illegal any further search of T.G.’s person without probable cause of criminal activity.
I would not view T.G.’s challenge to the search of his person under a Terry rationale so narrowly as to exclude from its ambit the continuation of that search once the rationale for it no longer existed. The requirement that a police officer must have reasonable suspicion to initiate a Terry search is inseparable from the parallel requirement that the search must cease once that suspicion is determined to be groundless. The search was one event, and T.G., in my view, by challenging the constitutionality of the search, has reasonably brought before the appellate courts for review not only the initiation of the search but also its continuation.
T.G. was adjudicated delinquent for possessing pills, the discovery of which was outside the scope of a permissible frisk of his person. A patdown search for weapons for the purpose of “neutralizing] the threat of physical harm,” Terry, 392 U.S. at 24, “must ... be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.” 392 U.S. at 29. Because a Terry stop is “a carefully limited search of the outer clothing ... in an attempt to discover weapons *324 which might be used to assault” the officer, id, at 30, that .search is “not justified by any need to prevent the disappearance or destruction of evidence of crime.” Id. at 29. “Nothing in Terry can be understood to allow .., any-search whatever for anything but weapons.” Ybarra, 444 U.S. at 93-94. See Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (noting that “[t]he purpose of this limited search is not to discover evi-deñcé of crime”).
Once the absence of weapons has been confirmed, a further search of the person in the absence of probable cause of criminal activity violates the Fourth Amendment. In Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the Court held that contraband incidentally detected during “a protective patdown search,” id. at 368, may be seized only if the “contour or mass” of the object “makes its identity immediately apparent.” Id. at 375. This “plain-feel” doctrine does not permit the officer to continue to mar nipulate or to examine the object to determine its illegal character once the officer is assured that it is not a potential weapon. Otherwise the “‘strictly circumscribed’” search for weapons allowed under Terry, Dickerson, 508 U.S. at 378 (quoting Terry, 392 U.S. at 26), could be converted into “‘the equivalent of a general warrant to rummage and seize at will.’” Dickerson, 508 U.S. at 378 (quoting Texas v. Brown, 460 U.S. 730, 748, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (Stevens, J., concurring in the judgment)).
In Ex parte Warren, 783 So.2d 86 (Ala.2000), this Court applied Dickerson to exclude from evidence a plastic box an officer detected during a patdown search for weapons. Upon removing the plastic box from Warren’s pocket, the officer identified it as a Tic Tac brand breath-mint container. The officer opened the box and discovered small rocks of crack cocaine. Warren, 783 So.2d at 88. This Court framed the legal question as follows: “Can an officer’s tactile perception of an object such as a Tic Tac box, a matchbox, a pill bottle, or a film canister give the officer probable cause to believe, before seizing it, that the object is contraband?” 783 So.2d at 91. In other words, does the mere tactile perception of a container automatically create probable cause to seize the object as contraband under the “plain-feel” doctrine?
After surveying cases from .other, jurisdictions, this Court held “that if the object detected by the officer’s touch during a Terry.search is a hard-shell, closed container, then the incriminating nature of any contents of that container cannot be immediately apparent-to the officer until he seizes it and opens it.” 783 So.2d at 94. Consequently, “the officer cannot satisfy the Dickerson requirement that the officer have probable cause to believe, before seizing it, that the object is contraband.” Id. The leading treatise agrees: “If during a lawful pat-down an officer feels an object that obviously is not a weapon, further ‘patting* of it is not permissible.” 4 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 9.6(b) (5th ed.2012).
Other states apply Dickerson as this Court did in Warren. See Harford v. State, 816 So.2d 789, 792 & n. 2 (Fla.Dist.Ct.App.2002) (holding that a. police officer who removed a Newport brand cigarette box from a person in the course of a patdown for weapons was not justified in opening the box for further examination of the contents); Barfield v. State, 776 N.E.2d 404, 407 (Ind.Ct.App.2002) (holding *325 that a police officer’s action in removing a Marlboro brand cigarette box from a person stopped .for a traffic infraction and looking inside the box — in the absence of an immediate perception that it was a weapon or contraband — “was a search that ‘exceeded the permissible bounds of a legitimate patdown’ ” (quoting Johnson v. State, 710 N.E.2d 925, 930 (Ind.Ct.App.1999))); Commonwealth v. Jones, 217 S.W.3d 190, 197 (Ky.2006) (holding that it was error to remove a pill bottle detected during a patdown search for weapons, because “the criminal nature of the item ... was not readily apparent until the item was moved or manipulated by the officer”); State v. Lagarde, 778 So.2d 585, 585 (La.2001) (holding that the search of a “cigarette pack ... leading to the discovery of a crack-pipe, exceeded the permissible scope of the pat-down frisk sanctioned by” Terry); and Commonwealth v. Stewart, 469 Mass. 257, 261, 13 N.E.3d 981, 986 (2014) (holding that “reasonable suspicion alone was not sufficient to allow [a. police officer] lawfully to open [a] hard cigarette box, where there was nothing to-suggest that a weapon was inside”).
Officer Phillips’s action in removing and opening the cigarette boxes he detected during his patdown of T.G. seems to contradict the holding of Warren, I would therefore grant T.G.’s petition for a writ of certiorari and order supplemental briefing on the application of Warren to the record facts of this case. As Justice Johnstone noted in his special concurrence in Warren:
“Allowing searches beyond constitutional limits would solve or detect some more crimes, as a number of authoritarian governments around the world have proved. Allowing searches beyond constitutional, limits, however, would convert the authorities themselves from the solution into the problem,- as the same authoritarian governments have likewise proved.
“The founders of our country opted for the balance of limited government, which has become a blessing to our-citizens and a tradition revered at home and famous abroad. Limited government necessarily entails some limits -on the government.”
783 So.2d at 96.[4]

Conclusion

For the above reasons,. I respectfully dissent from the denial of T.G.’s petition for a writ of certiorari.

. Justice Shaw's special concurrence argues, contrary to the above analysis, that the legality of the search of the cigarette box is a separate and distinct issue from the legality of the patdown. Should T.G’. decide that his counsel was at fault in not- expressly raising the cigarette-box issue as a stand-alone legal argument, T.G. may potentially seek relief under Rule 32.2(d), Ala. R.Crim. P.